McDonald v. Mueller.

## Opinion delivered February 14, 1916.

1. CORPORATIONS—STATEMENT—FAILURE TO FILE—REMEDIAL AND PENAL STATUTE.—Kirby's Digest, § 859, providing for the personal liability of the president and secretary of a corporation failing to file its annual report, is a remedial statute, and the amending statute, Act 222, page 643, Acts of 1909, does not change its remedial character, but adds only a penal feature to it.

2. LIMITATIONS OF ACTIONS—REMEDIAL STATUTE—FAILURE OF CORPORATION OFFICERS TO FILE ANNUAL REPORT.—Kirby's Digest, § 5068, requiring all actions upon penal statutes to be brought within two years, can not be pleaded in bar of the remedial portion of Kirby's Digest, § 859, as amended by Act 222, page 643, Acts of 1909, placing a personal liability upon the officers of a corporation when they fail to file the annual statement required by the statutes.

3. PRINCIPAL AND SURETY—LIABILITY OF PRINCIPAL TO SURETY—LIMITATIONS.—In the relation between principal and surety, there is an implied contract of indemnity, which is not broken until the surety has been called upon to make good the default of his principal, and the period of limitation against that action is three years.

4. LIMITATIONS—FAILURE OF OFFICER OF CORPORATION TO FILE REPORT.—The statute of limitations runs against the president and secretary of a corporation, who have failed to file the annual statement required by law, as against the claim of a particular creditor, from the time when a complete cause of action exists in favor of that creditor.

5. CORPORATIONS—LIABILITY OF OFFICERS FOR DEBTS.—The defaulting officer is absolutely liable for the debts of the corporation, when he has failed to comply with Kirby's Digest, § 859, contracted during the period of the default.

6. CORPORATIONS—LIABILITY OF OFFICERS—NOTE OF CORPORATION—RIGHT OF HOLDER.—The holder of a corporation note may proceed against the corporation or its officers in default under Kirby's Digest, § 259, or both, but he can have but one satisfaction of his debt.

7. LIMITATIONS—ACTION BY SURETY.—Limitations do not run against a surety's action against his principal until the surety has paid the debt.

Appeal from Greene Circuit Court; *W. J. Driver,* Judge; affirmed.

*M. P. Huddleston, Robt. E. Fuhr* and *J. M. Futrell,* for appellant.

1. Under section 859 of Kirby's Digest, Mueller became liable for this indebtedness. This is a primary liability and the liability is to all creditors of the corporation. 90 Ark. 51; 68 *Id.* 433; 78 *Id.* 517. A surety is a creditor and the relation of debtor and creditor arises at the time of becoming surety. 96 Ark. 268; 98 *Id.* 200; 103 *Id.* 473; 24 *Id.* 511; 34 *Id.* 524; 40 *Id.* 547.

2. The statute does not run until there is some one to sue. The contract of suretyship is not breached until the surety pays the debt. Wood on Lim. to Actions, § 145; Brandt on Sur., § 199; Stearns on Sur. & Guar., § 297; 25 Cyc. 1113; 28 *Id.* 364; Jones on Mortgages, § 176. The statute of limitation applicable to this case is three years from the time the surety paid the debt. 34 Ark. 113; 76 *Id.* 245; 96 *Id.* 594.

3. The statute as amended is remedial and the three-year limit applies instead of the two-year penal statute. 68 Ark. 338; 146 U. S. 657; 36 Cyc. 1181-2-3; 134 Mass. 471: 85 N. E. 36; 93 Ark. 42; 146 U. S. 657; 75 Ark. 107.

4. The statute does not commence to run until a complete cause of action has accrued. 3 Ark. 409; 25 *Id.* 465; 10 *Id.* 228; 32 *Id.* 131; 25 Cyc. 1066.

5. A statute may be both penal and remedial. 36 Cyc. 1181-2-3; 134 Mass. 471; 93 Ark. 42.

6. Taking any view the suit is not barred. 2 Dougl. 699; 2 W. Bl. 1226; 2 T. R. 148; 16 Pick. 128, etc. The statute began to run on the maturity of the debt. 75 Ark. 107; 21 *Id.* 186; 40 *Id.* 545. But it is not material in this case whether the statute commenced to run from the creation or maturity of the debt, as McDonald was an accom-

modation endorser and hence a surety, and the statute began to run from the time he paid the debt. Authorities *supra;* 16 Ark. 81; 21 *Id.* 99.

*R. P. Taylor* and *Block & Kirsch,* for appellee.

1. It is conceded that appellant was a creditor, and that the liability is primary. 96 Ark. 268; 90 *Id.* 51. The creditor, so long as he is unpaid, has two remedies, one contractual against the corporation, the other statutory created by law against the officers for official neglect, either or both of which he may pursue. 90 Ark. 51; 53 C. C. A. 14. Against the corporation the suit is not barred until three years from the time he paid the debt. But as against the officers the statute began to run from the time of the creation of the debt. Kirby's Dig., § 848; 68 Ark. 433; 53 C. C. A. 14; 107 Fed. 188; 75 Ark. 107; 45 Pac. 662; 47 Vt. 313; 9 Abb. N. C. 275.

2. Whether the statute is penal or remedial or both, this suit is barred. 101 U. S. 188; 68 Ark. 433; 113 U. S. 452, 146 U. S. 657; 158 *Id.* 337; 35 N. Y. 412; 96 *Id.* 323; 33 Md. 487, and many others.

Smith, J. The Mueller Mercantile Company, a corporation, executed a note for $5,000, dated March 29, 1910, and due six months after date. This note was endorsed by appellant and appellee, and two other persons. On April 29, 1910, the same corporation executed another note for the sum of $10,000, due four months after date, which note was likewise endorsed by both appellant and appellee, together with three other sureties. Neither of said notes was paid and suits were commenced upon them at the October, 1911, term of the Greene Circuit Court. Before the final hearing of said causes, appellant McDonald filed a cross-complaint against appellee Mueller, in which he alleged that Mueller had entered into a contract with him by which he (Mueller) was to indemnify him against the payment of said notes. Mueller answered, denying any such contract, and upon the hearing of the issue, the jury returned a verdict in his favor. Judgment upon both of the foregoing notes was taken against both Mc-

Donald and Mueller and the other endorsers and against the Mueller Mercantile Company as principal. Subsequently Mueller and McDonald each paid one-third of said judgments and costs.

On October 8, 1914, appellant sued appellee for the amount which he had been compelled to pay, on the ground that, when the foregoing notes were executed and delivered, Mueller was the president of the mercantile company, and as such president, had failed to make and file the annual statement of said corporation with the county clerk as required by law. Appellee answered, admitting such failure as president, but pleaded former adjudication and the statute of limitations. Appellant demurred to this answer and stood upon his demurrer, when the same was overruled, whereupon his cause of action was dismissed, and this appeal has been prosecuted to reverse that action.

Appellee insists that the decree should be affirmed for a number of reasons. Among other reasons, he interposes the plea of *res adjudicta,* and has made a most plausible argument on that question. Under our view of the statute upon which this action is predicated, it is unnecessary to pass upon that question. This action is founded upon section 859 of Kirby's Digest, which reads as follows:

"If the president or secretary of any such corporation shall neglect or refuse to comply with the provisions of section 848, and to perform the duties required of them respectively, the persons so neglecting or refusing shall jointly and severally be liable to an action founded on this statute, for all debts of such corporation contracted during the period of any such neglect or refusal."

This statute was amended by the General Assembly of 1909 (Act 222, p. 643, Acts of 1909), by the addition of the following provision: "And shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not to exceed five hundred dollars, and each and every day such person or persons shall so neglect to comply with the provisions of said section 848 or fail or re-

fuse to perform said duties, shall constitute a separate offense.''

Prior to this amendment a case arose in which it became necessary to decide whether this statute was remedial or penal, and in the case of *Nebraska National Bank* v. *Walsh,* 68 Ark. 433, it was held that this was a mere statutory liability and was not a penalty, and that an action might, therefore, be brought under it within three years under the three-year statute applicable to ''all actions founded upon any contract or liability, express or implied, not in writing.''

(1-2)   It is now strongly urged that the nature of the action has been changed by the amendment set out above, and that even though the original statute was properly held to be remedial, the statute as amended must now be held to be penal, inasmuch as the amendment makes the official dereliction there provided against a misdemeanor. This amendment, however, does not change in any respect the statute which was held to be remedial, but adds only a penal feature, and it, therefore, becomes both remedial and penal. We conclude, therefore, that section 5068 of Kirby's Digest, which requires all actions upon penal statutes to be brought within two years, can not be pleaded in bar of the remedial portion of the statute.

(3-7)   The notes which formed the basis of this action matured, respectively, on September 29, 1910, and August 28, 1910, and this action was commenced October 8, 1914, which is more than three years from either the date or the maturity of the notes. While it does not appear when appellant was called upon to pay the third part of said notes, which he did pay, it is conceded that this payment was within three years of the date of the institution of this suit.

As the statute of limitations applicable to this action is three years, it becomes necessary, therefore, to decide the point of time from which the statute should be computed. A very earnest argument is made by appellee that the statute commenced to run from the date of these notes, and not from their maturity. But it is unnecessary to

choose between these dates, because more than three years had elapsed after the maturity, before the institution of this suit. Appellant, on the other hand, very earnestly insists that no cause of action arose in his favor until he had actually paid the money in satisfaction of the judgments rendered against him, and that this action is, therefore, not barred.

We think the case of *Griffin* v. *Long,* 96 Ark. 268, decides when the statute begins to run against the surety who pays his principal's debt insofar, at least, as that question is involved in a suit under sections 848 and 859 of Kirby's Digest. It was there said:

"This was a suit to recover a debt of the principal due to his surety for what he had paid for such principal. The principal in this case was a corporation, and the action was brought to recover the debt from certain officers of said corporation. The action is founded upon the statutes of this State, which provide that said officers of a corporation shall at stated times file reports of the financial condition of the corporation, and upon a failure or refusal to do so, said officers shall jointly and severally be liable 'for all debts of such corporation contracted during the period of such neglect or refusal.' Kirby's Digest, § § 848, 859. The material question involved in this case is: When, under the allegations of the complaint, was the debt due by the corporation to appellant, its surety, contracted? When one becomes surety for a principal, a liability arises upon the part of the principal to indemnify his surety for any payment which he may be compelled to make for the principal. *Hill* v. *Wright,* 23 Ark. 530; *Rice* v. *Dorrian,* 57 Ark. 541. The principal thus becomes indebted to the surety for the payments he is compelled to make for the former, and the question which arises is, does such indebtedness have its inception from the time the party became surety or from the time payment is made by the surety? The true rule seems to be that the surety becomes a creditor of the principal at the time he signs the note as surety, and not at the time he pays the same. In the case of *Wiggin* v. *Flower,* 5 Rob. (La.) 406,

it is said: 'Though the obligation of a surety can not be enforced till after the event on which it becomes absolute, it exists from the time it was contracted, so the rights of the surety against his principal exist before the obligation of the former becomes absolute.' ''

The case of *Griffin* v. *Long, supra,* as well as the case of *Jones* v. *Harris,* 90 Ark. 51, states the character of liability of the defaulting officers as primary, and not secondary. In the last cited case it was said:

''We have held that it creates a primary and not a secondary liability, and that the defaulting officers of the corporation become, by reason thereof, absolutely liable for the debts of the corporation incurred during the period of the default. This being true, they have no right to postpone the enforcement of the statute against them, and no equities can arise in their favor as against creditors of the corporation. *Nebraska National Bank* v. *Walsh,* 68 Ark. 433; *Ark. Stables* v. *Samstag,* 78 Ark. 517.''

The unpaid creditor has a choice of remedies. He may proceed against the maker of the note and the endorsers thereon, or he may proceed against the corporate officers for their official neglect, and he can pursue these remedies simultaneously, provided, of course, he can have only one satisfaction of his demand.

The question involved here is not merely the time when a surety may sue his principal, for in such case the statute of limitations does not run as against the surety until he has paid the debt, but the question here is, when does the cause of action created by section 859 of Kirby's Digest arise? In a discussion of the general purpose of legislation of this character, it was said in *Griffin* v. *Long, supra,* in a quotation from Thompson on Carriers:

''The reason of the statute is to require corporations to make such a public showing of their affairs as will enable those dealing with them to determine whether they can safely give them credit, and the mischief at which it

is aimed is not done unless the credit was actually given during the period of default.''

In the ordinary relation between principal and surety, there is an implied contract of indemnity, which is not broken until the surety has been called upon to make good the default of his principal, and this was the action which appellant set up in his cross-complaint in the original suit by the payee of the notes against him and appellee, and the period of limitation against that action is three years. But in answer to appellee's plea of *res adjudicata,* appellant insists that this is not the action which he now seeks to maintain, but that the suit is based upon the statutory liability of the defaulting corporate officer. But as has been shown in the cases quoted from, the liability of the corporate officers is an independent and primary one, arising out of the fact that the debt was contracted during the period of official delinquency, and we think, of necessity, the statute must be said to be in motion when a complete cause of action exists in favor of any creditor as against that cause of action.

This statute was under review in the case of *Continental National Bank* v. *Buford,* 53 C. C. A. 14, and in the opinion by Judge Caldwell, it was there said:

''It is settled by the decision of the Supreme Court of Arkansas in the case of *Bank* v. *Walsh,* 68 Ark. 433, 59 S. W. 952, that the statute on which this action is founded is a remedial statute, and imposes 'a statutory liability, and not a penalty,' and that the three years' statute of limitations applies to actions founded thereon. The single question left for our consideration is, when did the plaintiff's cause of action against the defendant accrue? The contention of the plaintiff in error is that it did not accrue until the maturity of the last renewal notes; the contention of the defendant is that it accrued when the debts sued for were contracted, or, at the furthest, on the maturity of the notes given at the time the indebtedness was created. The complaint does not disclose when the debts sued for were contracted, but they must have been contracted on or before May 3, 1894, and September 6,

1894, the respective dates at which the first notes mentioned in the complaint were executed. As the action is barred whether the statute of limitations commenced to run from the creation of the debt or from the maturity of the notes given at its creation, it is not essential to the decision of the case to determine whether, when the plaintiff made a loan to the Bank of Mammoth Spring or otherwise, became its creditor for a present consideration on an agreed term of credit and took a note accordingly, the plaintiff could the next day have brought suit for the amount of the debt against the defendant on his statutory liability to pay it as a debt of the bank 'contracted during the period' of his neglect and refusal to file the required certificate. Under the statute the defendant did not sustain to the debtor bank the relation of a joint principal, surety, or guarantor. His liability was primary, and not secondary. It was created by statute, and was not contingent upon the failure or inability of the bank to pay, but was absolute and unconditional. It resulted from his dereliction of official duty, and, if he had been compelled to pay the debt, he would have had no right of reclamation or indemnity from the bank. The statute imposed upon him the obligation of a principal debtor for his refusal and neglect to perform a duty enjoined upon him by law for the protection of the public. His legal liability for the debt was fixed and perfect the moment it was contracted, without regard to the solvency or insolvency of the bank, or to any proceedings against it to enforce payment. At the time when the first renewal notes were taken, the debt and the original notes given therefor had then become due and payable. The renewal of the notes operated as an extension of time for the payment of the debts by the bank, but did not release the defendant, either from his statutory liability to pay the debts or from immediate action therefor. As soon as the original notes became due and payable, if not before, the defendant was liable. The defendant was unquestionably then liable to an action, and so was the bank. These two rights of action in the plaintiff were not dependent. They were con-

current and independent. The plaintiff could assert either or both. The assertion of one would not preclude the assertion of the other. Suspending the assertion of the one would not preclude the assertion of the other. Nothing but satisfaction of the plaintiff's debt by the pursuit of one would take away its right to follow the other. If, therefore, the right of action against the defendant on his statutory liability did not accrue on the creation of the debt, it unquestionably did on its maturity, and the statute, having once commenced to run, could not thereafter be suspended so far forth as concerned the defendant, by an action of the plaintiff and the bank which might have that effect as between them. Without pursuing the object further, we may say that we concur in the opinion of Judge Folger in *Jones* v. *Barlow,* 62 N. Y. 202, 213, and have, in substance, adopted its reasoning."

While, of course, we are not bound by the interpretation of the statute, we think the correct conclusion was reached, and, as the conclusion was expressed with the clearness characteristic of the learned judge who wrote that opinion, we have adopted that opinion as expressing our own view.

It follows, therefore, that appellant's cause of action is barred, and the judgment of the court below is therefore affirmed.