**GORNY et al. v. TRUSTEES OF MILWAUKEE COUNTY ORPHANS BOARD.**

District Court, E. D. Wisconsin.
March 17, 1936.

---

and, although not so announced, it would seem that in effect they have submitted to a consideration of the case as upon motions for judgment upon or demurrers to pleadings. That is to say, the questions touch vital elements of plaintiffs' asserted cause of action, and the defenses set up in the answer; and the court is willing to consider them as appropriately raised.

The facts, not in dispute, are:

Mary Bulewicz, a resident of Milwaukee county, died May 13, 1920. Her estate was administered in the county court by the public administrator, and on February 26, 1926, the residue in the hands of such administrator, by a final judgment of said court, was escheated, and paid to the defendant herein under the provisions of section 2 of chapter 471, Private and Local Laws of 1871 of Wisconsin. Such defendant is a body corporate created by chapter 124 of the Private and Local Laws of 1871; and, as such, is composed of the judges of the various courts of Milwaukee county; and the corporation through them holds the property in trust for the use, benefit, and support of orphans under fourteen years of age living in the several chartered orphan asylums of that county. The act contains provisions respecting the duties of the trustees.

The amended complaint, after reciting in substance the foregoing, avers that Mary Bulewicz was survived by "neither issue, husband, father or mother, but by the fifteen plaintiffs, as heirs bearing relationship as brothers, nephews, nieces, grandnieces, or otherwise, as in detail alleged."

That on February 25, 1931, certain of plaintiffs, referred to as foreign heirs, presented to the county court of Milwaukee county a petition representing themselves to be heirs of Mary Bulewicz and "praying for a refund to them of said escheated estate of Mary Bulewicz, as her heirs"; and that such petition, having been served upon the defendant, came to hearing, whereon defendant appeared, and testimony was taken "in proof of the heirship of plaintiffs to said estate."

On June 21, 1932, certain other plaintiffs, referred to in the complaint as "American heirs," filed their petition in the county court of Milwaukee county, "praying for a refund to them of one half of the said estate of Mary Bulewicz, deceased, as her heirs"; that such petition

George C. Brown, of Grand Rapids, Mich., for plaintiffs.

Albert B. Houghton, of Milwaukee, Wis., for defendants.

GEIGER, District Judge.

The parties, by consent, submit questions of law arising on the pleadings;

was served upon the defendant, but it did not appear.

On October 14, 1932, the county court dismissed both of the petitions "for the reason that said court (by reason of the decision of the Supreme Court of Wisconsin in Re Lillian Payne's Estate, 208 Wis. 142, 242 N.W. 553), was without jurisdiction to hear and determine said petitions"; that on appeal from the ruling—a want of jurisdiction—the Supreme Court of Wisconsin on June 29, 1933, affirmed it, and further again ruled that the law of Wisconsin, above noted, providing for escheat to the defendant of personal estates of Milwaukee county, was in contravention of the State Constitution. In re Bulewicz's Estate, 212 Wis. 426, 249 N.W. 534. The complaint proceeds: "That after the decision of In re Lillian Payne's Estate, 208 Wis. 142, 242 N.W. 553, the State of Wisconsin began an action against the defendant herein in the Circuit Court of Milwaukee County to cover into the treasury of the state of Wisconsin the entire fund received by the defendant by virtue of section 2 of chapter 471 Private and Local Laws of 1871; that after the decision of In re Mary Bulewicz's Estate, 212 Wis. 426, 249 N.W. 534 (last supra), these plaintiffs filed a petition for leave to intervene and tendered answer in the case brought by the state of Wisconsin against this defendant; that such leave was denied by the Circuit Court of Milwaukee County, but the judgment thereafter entered in said cause, awarding said fund to the state of Wisconsin, reserved to these plaintiffs the right to prosecute an action to recover said fund in any court; that this defendant appealed to the Supreme Court of Wisconsin and plaintiffs' attorney secured leave and filed a brief amicus curiae supporting the claim of the state of Wisconsin to such fund in an effort to have such fund paid into the treasury of the state of Wisconsin so as to be available to these plaintiffs as provided in section 318.03, Statutes of Wisconsin hereinafter set forth; that the judgment of the Circuit Court of Wisconsin was reversed by the Supreme Court of Wisconsin on the grounds that the Attorney General of Wisconsin had notice of the proceedings in the County Court which resulted in the funds being paid to this defendant; and that the several judgments of the County Court transferring the escheated estate to this defendant, although rendered under an unconstitutional statute were res adjudicata as to the state of Wisconsin. State v. Trustees of Milwaukee County Orphans' Board, 218 Wis. 518, 261 N.W. 676."

The complaint alleges the trust character of funds received by defendant board; and that such trust comprehended the heirs to whom refund was obligatory during the period of the section authorizing payment to defendant of escheats; and further alleges the existence, at the time of the transfer of the estate, and of the making of claims for refund, of section 318.03, declaring the right of refund.

The plaintiffs, averring that "the remedies given by the statutes of Wisconsin having failed, and plaintiffs being without due and adequate remedies at law," pray, (1) for subpœna; (2) that plaintiffs be decreed to be the heirs of Mary Bulewicz, deceased, and entitled to her estate; (3) that defendant be decreed to account for the estate and its increment since October 14, 1932; (4) general relief.

It is assumed that in this complaint the pleader intended not argumentatively to discuss mere matters of law, but by reference to the law and the decisions, to disclose facts bearing pertinently upon the escheat fund in the hands of the defendant; that is to say, it is intended to disclose the facts upon plaintiff's contention that such escheat is a trust fund whereof they may have the benefit; and which, because of the course of ruling indicated, has come wholly within the cognizance of a court of general equitable jurisdiction.

It therefore appears both from the complaint and from the law and decisions referred to that the Private and Local Laws of 1871 made provision in substance for the assignment by the county court of Milwaukee county to the defendant orphan's board whose corporate existence was also enacted, of all escheats arising in Milwaukee county. On May 10, 1932, after sixty years of recognition and application, such law was held unconstitutional by the Supreme Court of the state because in violation of section 2, article 10, of the State Constitution prescribing that escheats be "set apart as a separate fund to be called 'the school fund.'" This was held in the case of In re Estate of Payne, 208 Wis. 142, 242 N.W. 553, involving initially the question whether such constitutional provision comprehended both lands and personalty; and such question was answered affirmatively.

Obediently to such decision, and the allegation of the complaint is in conformity with that and subsequent rulings, two phases of the situation developed.

(1) That the county court of Milwaukee county was held to be without jurisdiction to entertain proceedings for a refund of escheated estates.

(2) That the state of Wisconsin—although the general law of the state declared escheats to belong to it—had lost its right to recover from the defendant board because of appearance and participation in the proceedings to assign escheats to the defendant board; and this, upon the concession and reiteration of the unconstitutionality of the law of 1871.

It may be noted in passing that in the course of these proceedings—subsequent to the Payne decision—the plaintiffs took such steps as they then conceived appropriate for the enforcement of their rights of refund; that in the suit commenced by the state against the defendant board, the plaintiffs sought to intervene and the judgment therein, intervention having been denied, contained an express reservation of their right to proceed by independent suit, if so advised.

It is assumed that at the end of this course of litigation the following propositions are pertinent in the consideration of the case:

(1) Whether the Wisconsin rulings have overthrown the escheat statute, or curtailed the power of county courts to declare by judgment the escheat of estates.

(2) Whether the right of plaintiffs to refund has ever been denied, on its merits, by any court of competent jurisdiction.

(3) Whether the ruling of the Wisconsin Supreme Court denying to the state the right to recover the escheats which had been assigned to defendant cannot be interpreted as an adjudication against the plaintiffs herein, to assert their right of refund.

The case likewise calls for a consideration of the sections of the Wisconsin Statute referred to in the complaint, that is to say:

Section 318.01 (2), chap. 318: *"Escheats.* In case there shall be no known heir or distributee the personal estate not disposed of by the will shall belong to the state; and all the personal estate of any deceased person, which shall not be claimed by the legatee, heir or distributee within three years after the death of the owner thereof, shall, in like manner, belong to the state, subject in both cases only to the debts, funeral charges and the expenses of administration, and shall be paid to the state treasurer and become a part of the school fund."

Section 318.02: *"Rights of state, notice to attorney-general.* In all cases mentioned in subsection (2) of section 318.01 it shall be the duty of the county court having jurisdiction thereof to notify the attorney-general of the interest or probable interest of the state in such estate immediately after the same shall come to the knowledge of such court; and the attorney-general shall appear for and protect the interests of the state therein."

Section 318.03: *"Payment to state, when refunded.* The sum paid by the representative of any estate named in subsection (2) of section 318.01 into the state treasury shall be refunded to the proper owner, who had not before asserted claim thereto, upon his establishing his right to the same as herein provided. Such claimant may, at any time within five years after the payment of such sum into the state treasury, file with the county court of the county where the estate was settled a petition setting forth his right to the sum so paid to the state treasury and the grounds thereof; said court shall thereupon fix a time and place for hearing such petition and shall by order require the claimant to notify the attorney-general of the time and place so fixed for such hearing at least thirty days before such time. It shall be the duty of the attorney-general to appear for and protect the rights of the state. When the claim is finally adjudicated by the county court, or on appeal by the appellate court, if allowed, the county court shall so certify to the secretary of state, who shall thereupon audit and the state treasurer shall pay the same; but no interest on the claim shall be paid by the state."

These sections constitute the general law of the state of Wisconsin governing escheats and rights of refund.

While there has been elaborate discussion in the briefs respecting the character of judgments of escheat, the plaintiffs, as I conceive, make no claim that such judgments are not in rem, and concede that in the case before us the particular judgment rendered by the county

court for Milwaukee county was and now is perfectly valid, not open to collateral attack as a judgment of escheat. Plainly, they do not concede that the portion of the judgment assigning the estate to the defendant was or is valid. That portion, so the Wisconsin ruling is, was and is invalid as an unconstitutional diversion. Therefore the proposition first above noted is given an affirmative answer.

■ With respect to the second proposition, the most that can be said is, that as between the plaintiffs and the defendant, or the state of Wisconsin, or any one else, the merit of their claim for refund, howsoever hard they have striven, has never been adjudicated in their favor or against them. The whole effort made on their behalf was held for naught when the jurisdiction of the tribunal, apparently having the power to entertain and pass upon the claim, was denied. But, as last above indicated, all this is not only consistent with, it is predicated upon, acknowledgment of jurisdiction to pass judgment of escheat.

■ Considering the third proposition, not only upon the face of the successive adjudications by the Supreme Court, but in the light of the plaintiffs' theory respecting their right, the refusal of the successive tribunals to entertain, first, the plaintiffs' claim, second, the claim of the state of Wisconsin, may cast a sort of paradox in attempting to state plaintiffs' claim. But taking the suit commenced by the state against the defendant, it should not be considered upon the hypothesis that from the state's standpoint the plaintiffs herein had been, or necessarily would be, excluded from asserting a right. There is no pretense that prior to the final judgment in the state case any of the courts, save the county court, initially, were appealed to for determination of the merit of plaintiffs' claim. The determination on such appeal was not a denial of merit, but solely a denial of power. Likewise the adjudication in the state case proceeded upon the hypothesis not that the state at all times had been and was without right, but that the state had lost or sacrificed its rights through participation in a proceeding which the county court had authority to entertain and, so to speak, rendered an erroneous judgment wherein the state acquiesced. The state's rights apparently were treated as lost in default of challenging the judgment assigning the escheats under the law of 1871. Very obviously, in

commencing the suit against the defendant board, the state could not and did not presume to act for any one excepting its own sovereignty and then only with respect to enforcing its right to receive the fund. It could not presume to have represented the plaintiffs in this case upon assertion of their right to a refund of what, except as against their right to refund, was not only a valid but an absolute escheat. And plaintiffs' right to a refund, if it is at all of the character asserted by the plaintiffs, was and is a right against the fund wherever it may be, and particularly against the state.

■ This brings us to a consideration of the escheat statute, and the quality, as it may be termed, of the "refund right," assertable by whosoever claims to be—as the statute characterizes him, or them, "the proper owner." And this consideration, so it seems to me, must proceed upon the hypotheses (a) that in the case before us, a valid judgment of escheat was rendered as hereinbefore indicated; (b) that, in so far as such judgment assigned the estate to the defendant herein, it was void, but held binding on the state because of noncontest or nonassertion (on its appearance in the proceedings) of its right to have it covered into the school fund; (c) that such judgment, regardless of the state's commitment to its binding force, did not and could not cut off or otherwise extinguish as an indestructible reservation—against the res—of the "proper owner's" right—if the latter be timely asserted; (d) that if the judgment of escheat, in rem, was binding on the world, the reserved right, both against the res, and in favor of such "owner," is a right as broad as the escheat, and exists, and may persist in attempted enforcement, through a prescribed, or other available remedy, until recognized, or defeated, as a matter of merit, or otherwise lost, or effectively extinguished; (e) that in any event, such right, if it amounts to anything, is a right reserved expressly against the state, consistently with its right to "receive" and hold the fund, and, by necessary implication, against the fund, wherever it may be; (f) an adjudication, not that the escheat never belonged to the state, but that the state lost its right to receive it, through noncontest, upon its appearance, is not an adjudication that then and thereby the "proper owner" lost his right. The hypothesis of the Payne Case is that defend-

ant could not constitutionally receive the fund at all; and, as indicated, a ruling that the state was bound by a void judgment awarding the fund to the defendant does not reach the "proper owner's" right, if the latter is of the character claimed for it. The ruling may have the effect of quieting defendant against the state's claim, but not the plaintiffs': In other words, the ruling in Re Bulewicz's Estate, 212 Wis. 426, 249 N.W. 534, cannot be converted to a ruling on the merit of plaintiffs' claim, merely because the question therein raised respecting the right of the state was subsequently, at the suit of the latter, answered adversely to it—particularly in the light of plaintiffs' efforts (unsuccessful) to intervene and test their rights therein against the herein defendant.

Now, these various hypotheses (and probably they could be stated more succinctly), no matter what the right be called, that is, whether it be of the nature of a right cestui qui of a "trust" of some kind, can hardly be considered respecting their tenability upon the thought that the "right of refund" is unsubstantial, or that it lacks ordinary ingredients of ownership of property. No one can say that the escheat is intended to vest in possession and right of enjoyment in absolutism—beyond possibility of defeasance. The real quality of the reserved right is found in its capability, when exercised, of defeating an escheat, and restoring the fund to the "proper owner." That clearly is the disclosed legislative intent. And when this is recognized as the real quality of the reserved right, it makes little difference whether we call it a right of defeasance against what would otherwise be an absolute escheat, or whether we characterize the escheat, so far as the "proper" owner is concerned, as provisional only. In any event, as already indicated, the right, if it amounts to anything, is granted against the escheated fund; and it must be regarded as adversary to it, and, during the time when it may be exercised, adversary to whoever may hold such fund; and certainly adver-

sary to the state, to whom it belongs, if not reclaimed, absolutely.

Therefore, no matter how it is characterized, the right of plaintiffs, in some way to obtain a refund, should be upheld. Obviously, the remedy or remedies open to pursuit in the county court and against the state treasurer, through no fault of plaintiffs, have failed; and I agree that in this situation a court of general equitable jurisdiction should be open to them.

■ There is left for consideration the question whether any limitation statute may be pleaded by the defendant. It is my judgment that, if any Wisconsin limitation is applicable, it is found in paragraph 4 of section 330.18, a ten-year limitation in actions cognizable by the court of chancery, "when no other limitation is prescribed in this Chapter." Indeed, if plaintiffs' right is treated as pertaining to the enforcement of a trust or its equivalent, there is good reason for saying that no Wisconsin statute of limitation gives the defendant a basis for pleading it. For in so far as plaintiffs have sought to enforce their rights, both parties have been confronted with a want of power of the tribunal over the subject-matter; and the want of power to deal with the merit of plaintiffs' claim respecting the existence of a trust and their right thereto is not effective as a denial or a repudiation by the defendant of the trust or of plaintiffs' right. I assume that the latter attitude is usually effective to set the cited limitation act, paragraph 4, § 330.18, in motion. In any event, the limitation of that section has not run.

■ The questions (1) respecting the applicability of section 330.19 of the Wisconsin limitation act; and (2) whether the judgment of the county court of Milwaukee county, in escheating the estate of Mary Bulewicz to the defendant herein, is res adjudicata and not subject to attack by plaintiffs, are both answered in the negative.

I have not considered a third question respecting defect of parties.