ESTATE OF LIBERT: RASMUSSEN, Appellant, vs. THE STATE, Respondent.

*March 9—April 5, 1955.*

For the appellant there was a brief by *Zimmers, Randall & Zimmers,* attorneys, and *Wilke M. Zimmers* and *Peter P. Woboril, Jr.,* of counsel, all of Milwaukee, and oral argument by *Wilke M. Zimmers.*

For the respondent there was a brief by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane.*

FAIRCHILD, C. J. The significant question here is whether or not Wilhelmina Rasmussen was a legally adopted child of Ans Libert. Does her status come within the concept of a validly adopted child recognizable by the state of Wisconsin under which she has claim to inheritance of intestate property? The only form of adoption valid in Russia and Latvia at the time involved which is compatible with our concept of adoption is that which is described by petitioner's witness as "usynovlenie." Quoting from this witness' opinion:

" 'Usynovlenie,' which literally means the 'making of a son,' resulted in giving the adopted child ('usynovlennyi') all

the rights and duties of a natural son or daughter born in wedlock (Code of Civil Laws of the Baltic Provinces, sections 187, 188), though it established no legal relationship between the adopted child and the relatives of the adoptive parents in the ascending and collateral lines unless such relationship was established by contract (section 188); further, it cut off the parental authority of the adopted child's natural parents, although it did not cut off the adopted child's rights (including rights of inheritance) in relation to his natural family unless he directly renounced such rights (section 189, 1875). The inheritance rights of the adopted child ('usynovlennyi') as respects the adoptive parent ('usynovitel') fell into two classifications: He could inherit the so-called hereditary property only by contract of inheritance . . . but in regard to so-called acquired property, and in the Livonian province in regard to all movables, he had the same rights of testate and intestate succession as a natural child born in wedlock (section 1874)."

This summary of the foreign adoption laws is recognizably analogous to our statute, sec. 322.07, Stats., which reads:

"(1) Except as otherwise provided in this section, the effect of the order of adoption is to completely change the legal status of the adopted person from that of a child of the natural parents to that of a child of the adoptive parents; and to free the adopted person from all legal obligations to or on account of the natural parents, and *vice versa*.

"(2) If the adopted person is not survived by a spouse or by issue or by an adoptive parent and there is no heir or next of kin of the adoptive parents, the property of the adopted person shall descend and be distributed as though there had been no adoption.

"(3) If a parent of the person adopted is married to the adoptive parent the relation of the child to the natural parent is not altered by the adoption.

"(4) The adopted person does not lose the right to inherit from his natural relatives.

"(5) The adopted person shall inherit from his adoptive relatives in the same manner as from his natural relatives."

In this same witness' opinion, we find laws much like those in our own state requiring court procedure in cases of valid adoption:

"Section 2996 of the Civil Code of the Baltic Provinces states: 'The following legal transactions must be made in court: . . . (3) Those of adoption.' Section 2999 states that failure to fulfil the requirements of section 2996 results in the invalidity of the transactions listed in section 2996. Special laws applicable to peasants and to city dwellers repeated the requirement of court proceedings for a valid adoption."

And finally, in sec. 369 of the Statute on Livonian Peasants, there appears the following reason for requiring registration in court of adopted children by adoptive parents, *"so that there will be no doubt or uncertainty in case of inheritance."*

From the above it is clear that a valid adoption was, at the time involved in this case, understood under the laws of Russia and the Baltic provinces much the same as it is in our state. Those laws would be rendered meaningless if a "priemysh," a child taken into the family with no formal proceedings, could be considered as a validly adopted child. The fact that there was another and less formal status ("priemysh") coexisting with that of a child adopted by statute ("usynovlennyi") and the fact that there were laws governing inheritance of the "priemysh" does not establish the status of a "priemysh" as that of a validly adopted child. Nor does the fact that petitioner, as a "priemysh," would have received the whole of the common property of the deceased under the provisions of "the Baltic Code and the peculiar workings of the community-property system" determine her status to be that of an adopted daughter of Ans Libert. The following conclusion of the opinion of petitioner's witness points to substantial legal differences, which must be taken into consideration here, between a "priemysh" and a child adopted through court proceedings:

"The fact that no formalities were required for the adoption of a child as a 'priemysh;' the fact that the relationship could be varied by agreement of the various parties concerned; the fact that the 'priemysh' had some but not necessarily all the rights and duties of a son or daughter; the fact that the 'priemysh' relationship was not necessarily permanent—these facts distinguish the 'priemysh' from the formally adopted 'usynovlennyi.' "

That paragraph describes a status contrary to that of a valid adoption. Under the foreign laws quoted above and under our own laws, a valid adoption can be created only through formal court proceedings, and the result is permanent.

While, under the rule of conflict of laws, an adoption, valid where made, will generally be recognized in another state, unless contrary to the laws and policy of the latter state, we find that the petitioner never acquired any relationship to the deceased other than the informal one of "foster child," and that the situation described does not create a right in her to inherit, as an adopted child, under the laws of the state of Wisconsin.

An analysis by the trial court, as well as that which we make here, results in the necessity of the conclusion reached by the trial judge. The trial court properly ruled that the property of the deceased descends to the state, which takes and holds it, not in a proprietary capacity, but in the capacity of a trustee. See *Estate of Payne,* 208 Wis. 142, 242 N. W. 553.

*By the Court.*—Judgment affirmed.