HOSPELHORN, RECEIVER, *v.* BURKE.

4-5211 120 S. W. 2d 705.

Opinion delivered October 31, 1938.

*I. J. Friedman* and *Geo. W. Dodd,* for appellant.

*T. W. M. Boone,* for appellee.

BAKER, J. The appellant was appointed receiver of The Baltimore Trust Company, which had been adjudged insolvent. It appears that the Bank Commissioner of the state of Maryland took charge of the assets and business of The Baltimore Trust Company under an order of the circuit court of that state. This was on January 5, 1935. The appellant in this action was appointed Deputy Bank Commissioner and receiver of that institution to administer these assets for the benefit of creditors. Circuit court No. 2 of Baltimore City made an assessment of 100 per cent. against the capital stock of the aforesaid banking institution and ordered the receiver to make collection thereof. The appellee, Mrs. Burke, in this action was the alleged owner of fifty shares of said stock, the par value of $10. The certificate representing this stock was registered in her name. She was sued upon this assessment and the issues were decided by the circuit court in her favor, and it is from this judgment that the receiver has appealed.

The main issue upon this appeal is; Was this assessment made as the result of a penalty statute of the state of Maryland, authorizing the same?

In explanation, it may be stated that if it be determined that the amount sued for was a penalty, it is then urged, first, that the penalty imposed by reason of the laws of a foreign state will not be enforced by the courts of this state; and, second, that if the amount sought to be recovered is a penalty, it is barred by the statute of limitations of two years. Other matters presented and argued by the excellent briefs arise as merely incidental to the issues that we have suggested as controlling in the disposition of the whole controversy.

The facts are not disputed and may be concisely stated as follows: The Baltimore Trust Company several years ago reorganized its business set up. While the process of reorganizing was going on the appellee in this case was visiting her daughter and son-in-law in Baltimore and the matter of reorganization of the trust company was discussed by them at that time and by friends with whom the family had contact. Mrs. Burke had an invalid granddaughter, about ten years old. It is argued that she was desirous of doing something to show her affection for this child and that she gave to her son-in-law a sum of money perhaps $375, with which to buy $500 worth of the capital stock of the bank, during this reorganizing process. It was her purpose, and she directed her son-in-law, to buy this stock for the grandchild. The record of the bank shows that a broker bought this $500 certificate of stock in the name of Mrs. Alice (M. C.) Burke. There is no evidence that Mrs. Burke knew this stock was taken in her name until a comparatively short time before the insolvency of the bank. That is to say, she may have known it for a year or two, and it is probable, and we think indicated from the record, that at the time she learned of it her granddaughter had already died. She wrote some letters to The Baltimore Trust Company, insisting that the stock be sold. She did not disclaim or disavow her ownership in the stock at the time she was ordering it to be sold by the bank. The bank failed. The asssessment was duly made, and about two years and six months thereafter this suit was filed.

Perhaps the most difficult problem that we have to solve upon this appeal is to determine whether this assessment is a penalty. An examination of what the law writers have described or defined as a "penalty" seems to lead into confusion almost interminable. There seems to be an infinite variety of cases holding that under particular given or stated facts recoveries of almost every kind are classed as penalties under some particular use of the terms. For instance, fines are called penalties. Extraordinary liability of wrongdoers in favor of the

one who suffers the wrong is sometimes designated as a penalty, though perhaps more often spoken of as damages. Even in matters of private contract, the parties bind themselves as to a "penalty" or in the "penal sum" of a bond. The curious might be interested in the technical discussion set forth in 21 R. C. L., 206 *et seq.* Our own court has defined a penal statute in the case of *Nebraska National Bank* v. *Walsh,* 68 Ark. 433, 59 S. W. 952, 82 Am. St. Rep. 301. Perhaps, the most common or best known penalty with which the public generally may be acquainted arises out of the provisions of the law requiring a taxpayer to pay a certain excess amount in case of delinquencies in the payment of taxes. Since we find it practically impossible, on account of the great contrariety of opinion, to set forth a definition which might be termed as all inclusive of the true penalty, as well as exclusive of similar liabilities not so-called, we prefer to take another course in expressing our views as to the nature of the liability under this Maryland statute (Code Pub. Gen. Laws Md. 1924, art. 11, § 72) and authorized order of the circuit court of that state. We think by this method of discussion of the facts and the legal import arising out of them the vexed question will be more understandingly presented than would be an abstruse reasoning in regard thereto.

It is not an unfamiliar principle that controlling statutory law, that is to say, the law of the place, in regard to the subject-matter of a contract is written into every contract that may be made by proper contracting parties. 13 C. J. 247, § 19, *et seq.*

A great list of authorities might be cited supporting this proposition. We think, however, this unnecessary, as everyone must admit, that the orderly conduct of business, as well as public policy generally impels this conclusion. This announcement of law being conceded, as it must be, then one who offers to buy the capital stock of a corporation offers to be bound by the law in relation to the subject-matter about which the parties are contracting, and the payment therefor and issuance of the stock constitute only a part of the contract by

which the parties bind themselves. The law imposes upon them, or writes into their contract the statutory rights of the bank or corporation issuing the stock and of the shareholder accepting the same. 12 C. J., p. 769, § 240, *et seq.*

So in this case the shareholder applying for the certificate of stock offers the market price therefor and accepts the stock with the right among others to share in, or take dividends or profits arising therefrom, and at the same time, under the same statute, the shareholder must accept the concomitant menace or threat of loss or potential liability which the statute fixes. In other words, the shareholder of this bank stock not only contracted for dividends and profits, but she contracted also that in case of insolvency and an assessment upon the shares of stock, she would pay such assessment. The terms of this contract are fixed by the law as much so as if they had been written into a stock subscription signed by her having such express provisions set forth therein.

Upon this theory of the case we are confronted with an argument that the appellee in this case did not buy this stock for her own use and benefit, but that the evidence is uncontradicted that she bought it for the invalid grandchild. On account of the state of this record we must concede every implication which the law permits to support this theory; and the decision thereon should be consonant with sound reasoning and with the law as declared, either by statutes or by the courts of the land.

We have already indicated above that the nature of this transaction is contractual, the bank being the seller of the shares of stock, the shareholder the purchaser, and the compelling implications of the law as fixing all other terms and conditions of the contract. One of the first troubles which this situation presents is that the unfortunate child was, in law, incapable of contracting. She could not make a contract to purchase bank stock and be bound thereby later to pay such assessments as might accrue by reason of the insolvency of the bank. If it be deemed that presumptively the contract was made

for her benefit, she could disavow its obligations on arriving at maturity.

Parties to this litigation argue seriously the question of agency and the scope thereof of the appellee's son-in-law. To him she gave the check or money to buy the stock. It is urged there was an implied agency of the stock brokers who purchased the stock in the name of the appellee, and the scope of that agency is questioned. We think it might well be conceded that the son-in-law, to whom the money was given, as well as the brokerage company, who handled the account in the purchase of the stock, had no power to bind the appellee, except to deliver to the trust company the money which she furnished; that she is not bound by the questioned conduct of either one of the parties, the son-in-law, or brokerage company, as her agent, unless she is bound by the law without regard to such agents or agencies.

It is also urged that the brokerage company had no power to have this stock certificate issued in the name of the appellee and thereby build a liability against her. With all this reasoning, and with the authorities cited, on the matter of agency, we are impelled to agree to the fullest extent, remembering only in doing so that she furnished the money, intending that it should be used to purchase this bank stock. Whether the son-in-law or the brokerage company be treated as an agent in delivering over this money makes no difference because of the fact that she did supply the money, that she intended it to be used to purchase this bank stock, is in no wise disputed by anybody. This state of the record forces an irresistible conclusion that the only parties to this contract were the purchaser of the bank stock, the appellee, and the seller, The Baltimore Trust Company.

There is no contention that the giving of the money to the son-in-law should have been accepted by him as a gift for the benefit of the child, for even the appellee insists that it was to be used for the specific purpose of buying the $500 certificate, or fifty shares of stock. She gave the money for the exclusive purpose of buying this stock and became the purchaser thereof. She says it

was for the benefit of the child, and this statement is, no doubt, true. She alone, from the purchaser's angle, was capable of contracting. The child was not, so it must have positively followed that even though the certificate of stock had been issued in the name of the child she would necessarily have been the contracting party for its benefit and bound by all the terms, implications and conditions of that statutory contract. So we think it must be conceded that she was not prejudiced by reason of the fact that the certificate of stock was issued in her name. She was bound as above set out by all the terms and conditions of the contract, even though it had been issued in the name of some other party, unless the issue had been to some party capable of contracting and accepting the certificate and its responsibilities.

In addition to all this, the appellee, by writing the letters to the trust company authorizing and directing the sale of these shares of stock, acknowledged her true legal status. She did not thereby create a prospective liability, but she recognized one already in being.

The courts have frequently held that a transfer of the capital stock of a bank to an irresponsible party to avoid a threatened or prospective assessment is fraudulent and the transferrer, though he may shift the apparent ownership, cannot shift in like manner the contractual liability imposed by law. *Early* v. *Richardson,* 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658; *Keyser* v. *Hitz,* 133 U. S. 138, 10 S. Ct. 290, 33 L. Ed. 531; *Foster* v. *Chase,* 75 Fed. 797; *Foster* v. *Wilson et al.,* 75 Fed. 797. Child not bound by such contract. 8 Thompson Corp., 3 Ed. 378, § 6442; 1 Cook Corp. 363, § 67; 2 Cook Corp. 1112, § 318.

We suggest that if the liability were purely statutory and not contractual a child or others incapable of contracting would be bound by the universal application of the law.

The statute authorizing this assessment is not treated in the state of Maryland as a penalty statute. We find it cited as § 72 of Annotated Code of Public General Laws. Under this statute the liability is treated as con-

tractual, not penal. It is so held in these cases: *Ghingher* v. *Bachtell*, 169 Md. 678, 182 Atl. 558; *Allender* v. *Ghingher*, 170 Md. 156, 183 Atl. 610. Not a penalty, but arising *ex contractu*, so held in *Norris* v. *Wrenschall*, 34 Md. 492, 500; *Coulbourn Bros.* v. *Boulton*, 100 Md. 350, 59 Atl. 711.

We think from the foregoing that it is conclusive that the liability in this case is not in the nature of a penalty, but rather an obligation by contract, and this holding is in accord with the great weight of authority. This conclusion indirectly, but impliedly, settles adversely to appellee's contention the next argument made to support the judgment rendered in this case for the appellee. That argument is to the effect that the obligation sued for was a penalty in its nature, and that the two years statute operated as a bar. Section 8932, Pope's Digest.

Our conclusions above set forth must result in our holding also that this contention is without merit. Since the amount sued for is not a penalty, the two year statute does not apply. Therefore, we hold the claim is not barred by the statute of limitations. It was held in *Nebraska National Bank* v. *Walsh*, 68 Ark. 433, 59 S. W. 952, 82 Am. St. Rep. 301, that actions founded upon any contract or liability, expressed or implied, not in writing the applicable statute of limitations was three years. Pope's Digest, § 8928.

It may be suggested as a matter of interest that it was recently held, but not by this court, that the five-year statute was applicable in this state and that period must have elapsed in order that suits to recover such assessments be barred. See *Armstrong* v. *McAdams*, 46 Fed. 2d 931.

We hold the court erred in entering judgment for appellee; that under the undisputed facts and the law, judgment should have been rendered for the receiver for the sum of $500 with six per cent. interest from the date of the assessment.

The judgment of the circuit court is reversed, and judgment is rendered here against the appellee for the debt and costs.