WILLIAMS, ADMINISTRATOR *v.* MURPHY, TRUSTEE.

4-5633 133 S. W. 2d 857

Opinion delivered November 20, 1939.

*Paul X. Williams,* for appellant.

*Evans & Evans,* for appellee.

GRIFFIN SMITH, C. J. This is the fourth appeal growing out of or incident to the will of M. A. Williams. *Williams* v. *Williams,* 167 Ark. 348, 268 S. W. 364; *Williams* v. *Chambers,* 195 Ark. 654, 113 S. W. 2d 722; *Chambers, Administrator,* v. *Williams, Administrator, ante,* p. 40, 132 S. W. 2d 654, Law Reporter of October 30, 1939.

May 14, 1937, Marion Wasson as state bank commissioner filed an amended complaint asserting that Chas. X. Williams was the administrator in succession of the estate of M. A. Williams. There was the averment that Williams, at the time of his death, was the owner of two certificates for an aggregate of 80 shares of the capital stock of the Bank of Booneville; that in October, 1934, the bank became insolvent, necessitating

liquidation; that within sixty days a 100 per cent. assessment against all stockholders was levied; that Georgianne R. Williams, then administratrix of the M. A. Williams estate, had refused to pay the assessment, although under the will of M. A. Williams such stock passed to her and she received the dividends paid thereon, and that the estate of M. A. Williams, ". . . as well as the property attempted to have been conveyed by the will of Georgianne R. Williams, is liable for the payment of the assessment."

October 11, 1937, H. G. Murphy, trustee, was substituted as plaintiff in lieu of Wasson, commissioner.

In November, 1936, suit had been filed against Georgianne R. Williams and twelve other defendants, alleging the stock obligations and failure to pay. November 5, 1937, the action against Mrs. Williams was revived against her administrator, Wendel Chambers.

In his answer as administrator, Chas. X. Williams charged that Murphy, trustee, had satisfied the stock assessment; that such satisfaction extended to all of the capital stock of the bank, the means of discharging the obligations having been through use of "frozen" deposits; that these deposits were purchased at a discount, some as low as 20 per cent. of their face value, and ". . . if the estate of M. A. Williams is the owner, or liable for the assessment, its liability to [the trustee] would only be for its proportionate part of the sum actually paid in acquiring the frozen deposits."

There was a demand that Murphy be required to disclose the expenditure incurred in settling the assessment, and that ". . . this court determine whether the estate of M. A. Williams is liable for anything on the shares of stock alleged to have been owned by him at his death; and if so, declare the proportionate share of the actual expense of settling the stock assessment which is a charge against this estate."

In a motion filed by Chas. X. Williams as administrator (March 30, 1939) reference was made to the testimony of L. L. Green, deputy commissioner in charge

of liquidating the Bank of Booneville. Green had formerly been cashier. It was asserted that Green's testimony showed that records of stock liability and payments made thereon (pursuant to the agreement with Wasson as to satisfaction) had been burned. There was a prayer that the plaintiff be required to state under oath ". . .. the name and amount of the depositor and deposit that the plaintiff applied to the discharge of said stock assessment, and then obtain the testimony of the depositor as to how much he received for his deposit."

The decree was that Murphy as trustee was entitled to judgment against Chas. X. Williams as administrator for $2,132.60, this ". . . being the assessment of $2,000 against the stock in the Bank of Booneville owned by said estate, less the amount of $22.16 paid thereon, the remainder ($1,977.84) being figured at ninety-five cents on the dollar, plus 6 per cent. interest thereon from January 1, 1937."

Counsel for appellant says: "The best evidence in this case is the stock record of the defunct bank, which proves that the M. A. Williams estate was not a stockholder when the bank failed, and [when] the stock assessment [was] levied."

Appellant's theory of the controversy is shown in the statement of counsel that "When the shares of stock were delivered to the life tenant and accepted by said life tenant, then so far as the stock is concerned the administration of the estate was complete."

M. A. Williams died in 1908. Mrs. Williams had the certificates transferred to herself October 7th of the same year. September 16 preceding the transfers an *ex parte* proceeding had been conducted in the Logan chancery court upon petition of Mrs. Williams. The chancellor, in construing the will of M. A. Williams, found that it vested in Mrs. Williams ". . . a present absolute estate" in all of the real and personal property formerly owned by M. A. Williams.

When the bank transferred the certificates to Mrs. Williams notation was made on its records: "See chancery record 'A' 323." The reference was to the decree of September 16.

From October, 1908, until October, 1934—a period of 26 years—Mrs. Williams, thinking she was owner of the stock, in good faith treated it as her personal property. In view of the chancery proceeding, bank officials undoubtedly held the same view. But, as this court has heretofore held, those who were not made parties were not bound. Liability on the stock did not arise until the commissioner levied an assessment subsequent to insolvency.

We have the unusual situation wherein an opinion of this court handed down February 21, 1938, (reversing a ruling of the Sebastian chancery court), retroactively affects interests which for more than a quarter of a century had been thought (at least by some of the parties) to be vested in Mrs. Williams; yet, under the law there declared (*Williams* v. *Chambers, supra*) she had only a life estate. Her act in surrendering the old certificates and procuring new ones did not affect the status of the stock. The certificates were merely evidence of the interest M. A. Williams, at the time of his death, had in the bank's capital. The stock's aspect as property was fixed by the will insofar as ownership was to be determined.

In *Hospelhorn, Receiver* v. *Burke*, 196 Ark. 1028, 120 S. W. 2d 705, there is a discussion (page 1032) of the nature of the liability incurred by the holder of bank stock. In that case a Maryland transaction was involved. We said: ". . . the shareholder of this bank stock not only contracted for dividends and profits, but she contracted also that in case of insolvency and an assessment upon the shares of stock, she would pay such assessment."

It was also said in the same opinion: "We have already indicated that the nature of this transaction was contractual, the bank being the seller of the shares of

stock, the shareholder the purchaser, and the compelling implication of law as fixing all other terms and conditions of the contract.''

Although, in the instant case, Mrs. Williams acquired personal property of the estate with full power to use it in a reasonably prudent and businesslike manner and to receive and if necessary consume the income or earnings, at her death the corpus and any unexpended earnings or increment passed to the testator's heirs. Perhaps it is not quite accurate to say that under the will Mrs. Williams ''acquired'' the property. Its custody, management, utility, and earning power were hers, but by the same document through which she attained such rights, the remaindermen likewise became interested parties with a deferred right of absolute ownership.

It was shown in *Chambers, Administrator* v. *Williams, Administrator,* that property of the value of $8,601.25 was in the hands of Mrs. Williams at her death. We held that this should be regarded as assets for the benefit of remaindermen, the presumption being that it was a part of the M. A. Williams estate as distinguished from the separate property of Mrs. Williams.

It is our view that the judgment should be against the administrator of the estate of the life tenant rather than against the administrator in succession of the estate of M. A. Williams, but only as a means of reaching the M. A. Williams estate property.

Mrs. Williams died subsequent to the time suit was filed against her. The cause was revived against her administrator. Appointment of Chambers was with the will of Georgianne R. Williams annexed. Appellee has cross-appealed.

The bank, on final liquidation, paid depositors 95 cents on the dollar. There is testimony that some of the deposits applied through Murphy as trustee in satisfaction of assessment liability were purchased at substantial discount. There is other testimony that 95 cents was paid. In the light of all the evidence we cannot say that the chancellor's findings of facts were against the weight of evidence.

We do not decide whether suit could be successfully prosecuted against an administrator for an assessment on bank stock when the assessment had not been made during the life of such administrator's testate or intestate and when the certificate had been transferred in a way to show record ownership in another; nor do we decide, in respect of an assessment, whether suit would lie against the administrator of a life tenant when the circumstances would require satisfaction out of the life tenant's property owned independently of the life estate.

What we do decide is that the same stock M. A. Williams owned (and transmitted as herein shown) was held by Mrs. Williams when the assessment was levied. Therefore, payment should be from the item of $8,601.25 referred to in *Chambers, Administrator* v. *Williams, Administrator, ante,* p. 40, 132 S. W. 2d 654, and identified as "residue of both estates."

The judgment is reversed and the cause is remanded with directions to enter judgment for the amount found by the chancellor to be due. It is further directed that Chambers, Administrator, satisfy such judgment before distributing the assets now in his hands. In the alternative, if such funds are in the hands of Williams, Administrator, he is directed to pay such amount to Chambers, Administrator, for the purpose of satisfying the demand.