VANDOVER, RECEIVER *v.* THE LUMBER UNDERWRITERS

4-5345                                              126 S. W. 2d. 105

Opinion delivered March 6, 1939.

*G. B. Oliver, Jr.,* for appellant.

*Gaughan, Sifford, Godwin & Gaughan, Daniel V. Howell* and *E. L. Hollaway,* for appellee.

GRIFFIN SMITH, C. J.   In May, 1933, J. W. Armstrong, as receiver for First National Bank of Corning, Arkansas, filed suit against The Lumber Underwriters, the Manufacturing Lumbermen's Underwriters, the Lumbermen's Underwriting Alliance, and "the unknown participating members of The Lumber Underwriters."

It was alleged that in January, 1931, the comptroller of the currency for the United States declared First National Bank to be insolvent; that February 21, 1931, a 100 per cent. assessment was levied against stockholders; that The Lumber Underwriters was a partnership and that certain assets belonging to said partnership were invested in stock of First National Bank; that, in evidence of such investment, 400 shares of stock of the par value of $25 per share were issued to The Lumber Underwriters; that although notice of the assessment was duly given, it had not been paid; that The Lumber Underwriters entered into contracts with Manufacturing Lumbermen's Underwriters and Lumbermen's Underwriting.

Alliance;[1] that "The Lumber Underwriters" was a name selected by the unknown participating members whom it was sought to make defendants; that such members had banded themselves together as partners to do a reciprocal insurance business;[2] that assets of The Lumber Underwriters constituted a trust fund in the hands of an attorney-in-fact, held for the payment of all obligations of the subscribers at the exchange; and that, although due diligence had been exercised, plaintiff was unable to identify and locate the unknown participating members.

It was further alleged that records of The Lumber Underwriters were in possession of the three underwriting exchanges, mentioned *supra,* with offices in Kansas City, Missouri. There was a prayer that such defendants be required to produce their books of accounts and records, to the end that plaintiff might discover the names and addresses of all persons who interchanged insurance agreements among themselves under the name, "The Lumber Underwriters," and that such persons be made parties defendants to the suit, or to other suits if necessary, to effectuate collection of the stock assessment. There was a further prayer for judgment against each of the defendants for $10,000, with interest, etc.

Armstrong resigned as receiver of First National Bank, and the appellant Ewell Vandover succeeded him. There was an order by the court that the cause be revived in Vandover's name.

---

[1] It was alleged that all of the assets of The Lumber Underwriters were transferred to Kansas City, but since appellant has abandoned its suit against the Lumbermen's Underwriting Alliance and the Manufacturing Lumbermen's Underwriters, this allegation is unimportant.

[2] Act 152 of 1915 now appears as §§ 7806 to 7819 of Pope's Digest. It provides that "Individuals, partnerships, and corporations of this state hereby designated subscribers, are hereby authorized to exchange reciprocal or inter-insurance contracts with each other, or with individuals, partnerships and corporations, of other states and countries; providing indemnity among themselves for any loss which may be insured against under other provisions of the laws, excepting life insurance."

Motions, amendments, demurrers, answers, etc., were filed from time to time.

The record shows that The Lumber Underwriters was organized under authority of Act 152 of 1915, and that A. B. Banks & Company was appointed attorney. [3] In 1928-'29, an examiner for the Board of Insurance Commissioners for Texas made investigations in Arkansas. He recommended that the permit of The Lumber Underwriters to do business in Texas be cancelled, and this was done. Later, in consequence of a written agreement relating to a reserve fund, the cancellation was withdrawn. Under the agreement, stocks aggregating $250,000 in value were placed in escrow. It is in evidence that in 1928 The Lumber Underwriters gave its check to A. B. Banks & Company for $152,512.25 in payment of stocks, the contention being that by this transaction The Lumber Underwriters acquired ownership of the 400 shares of First National Bank stock, against which the assessment was made. There is convincing evidence that The Lumber Underwriters gave its receipt to First National Bank for the stock. The receipt is dated September 17, 1928.

It is not seriously denied that First National Bank was in a failing condition in 1928. A. B. Banks & Company was invited to take over management of the institution. Stock was either given to the Banks Company, or it was transferred for an insignificant consideration. However, the Banks Company, as a condition to its participation, required a guaranty of $35,000. This was evidenced by two notes—one for $25,000, and one for $10,-000. These notes were good, the makers being men of considerable means. The guaranty was that the trans-

[3] The first paragraph in the power of attorney is: "The offices of A. B. Banks & Company of Little Rock, Arkansas, having been selected as a place at which to reciprocally exchange indemnity, such offices being designated The Lumber Underwriters, we, as subscribers at such Lumber Underwriters, appoint said A. B. Banks & Company of Little Rock, Arkansas, the survivors or survivor of them, jointly and severally, attorney for us in our name, place and stead, to exchange indemnity with subscribers at said Lumber Underwriters."

ferred stock, at the end of three years, would be worth 110 per cent. of par.

First National Bank did not prosper under the reorganization. April 13, 1929, an agreement was made whereby Corning Bank & Trust Company assumed deposit liabilities of First National Bank. Obligations due First National were assigned to Corning Bank & Trust Company. The latter closed November 18, 1930, and was reorganized in 1931 as *The* Corning Bank & Trust Company. Directors of Corning Bank & Trust Company declined to take over First National Bank until A. B. Banks & Company had executed a release, or waiver, of the guaranty of $35,000 previously exacted. In addition, A. B. Banks & Company agreed to pay deficiencies, after liquidation of assets, completion of collections, etc., if deficiencies existed, not exceeding $37,-500. Appellant contends that stock assessments were included in the assets guaranteed.

H. R. Hampton, J. M. Silliman, and J. W. Trieschmann succeeded A. B. Banks & Company as attorneys-in-fact for The Lumber Underwriters. December 4, 1930, they entered into contract with Lumbermen's Underwriting Alliance, and with Manufacturing Lumbermen's Underwriters, whereby the two exchanges, domiciled in Kansas City, assumed the unexpired terms of all policies issued by The Lumber Underwriters, "thus terminating liability of The Lumber Underwriters." Details of the contract are not essential here.

June 4, 1934, appellant was given a list containing the names of the defendants formerly referred to as unknown. August 15, 1934, an amendment to the complaint was filed, in which judgment was asked against the newly-named defendants.

Service upon all of the defendants was attempted through summons left with the Insurance Commissioner of Arkansas. Appellant concedes that as to the foreign exchanges, judgment cannot be rendered on such service. They had not done business in this state, nor had they been licensed in Arkansas. Service on The Lumber

Underwriters would have been good [4] had the suit been one to enforce a policy obligation, or a liability growing out of an insurance contract. But such attempted service did not give jurisdiction of the person of the defendants where the demand, as in the case at bar, was one predicated upon a statute imposing liability against holders of stock in an insolvent bank.

In Cooley's Briefs on Insurance, vol. 1, p. 70, the author quotes with approval from 58 Central Law Journal, p. 323, where it was said: "The term 'inter-insurance' is applied to that system of insurance whereby several individuals, partnerships, and corporations, underwrite each other's risks against loss by fire or other hazard, through an attorney-in-fact, common to all, under an agreement that each underwriter acts separately, and severally, and not jointly with any other." Judge Cooley then says that associations of this character may usually be sued in the name of the association, and that "Under the inter-insurance system of insurance, each member is liable for his proportionate share of the insurance granted by policy, and a member sustaining a loss could proceed in a single chancery suit to secure a decree for the aggregate liability of the subscribers and to fix the separate liability of each subscriber, or could proceed in an action at law against the combined members, the method of enforcing the liability being but a procedural matter, over which the legislature of each state has control."

Section 3 of Act 152 of 1915, which now appears as § 7807 of Pope's Digest, provides that subscribers to reciprocal or inter-insurance shall, through their attorney [in fact], file with the insurance commissioner a declaration, verified by oath; and concurrently, such at-

---

[4] *Lewelling* v. *Manufacturing Wood Workers Underpriters*, 140 Ark. 124, 215 S. W. 258. This suit was brought in the Howard Circuit Court to recover on a fire insurance policy. Summons was served on the Insurance Commissioner. A. J. Neimeyer Lumber Company, a domestic corporation doing a lumber business at Little Rock, appeared in the suit solely for the purpose of moving to dismiss for want of party defendant. The court sustained the motion and dismissed the complaint. The action was reversed.

torney shall file with the commissioner an instrument in writing, executed by him for said subscribers, conditioned that, upon the issuance of certificate of authority provided for in § 10 of the Act, "service of process may be had upon the insurance commissioner in all suits in this state *arising out of such policies, contracts, or agreements,* which service shall be valid and binding upon all subscribers exchanging at any time reciprocal or inter-insurance contracts through such attorney."

The power of attorney executed by members of The Lumber Underwriters contained a provision for appointment of an advisory committee consisting of five or more subscribers. [5]   Act 152 does not, by express language, authorize such a committee, and the committee's authority, of course, would be subservient to that of the attorney-in-fact, who in the Act is referred to merely as an attorney, agent, or other representative.

In the Lewelling Case, cited in the fourth footnote of this opinion, Mr. Justice HART discussed Act 152 and stated that "it provides for service of process upon the insurance commissioner *in all suits in this state arising out of policies issued by the association.*" It appears that the writer of the opinion, and this court in adopting it, had in mind the construction contended for by appellees in the instant case: that is, process served on the insurance commissioner gave jurisdiction of the person of the exchange, and it gave jurisdiction of the person of the exchange members in a suit to require ratable contribution in instances where the demand was predicated upon "such policies, contracts, or agreements." The words "contracts or agreements" are to be read in connection with "policies"—contracts or agreements relating to policies.

---

[5] The section referred to contained this additional provision: "In choosing said committee, the attorney is authorized to ask subscribers whom they desire to serve as such committee, and the requisite number selected by the largest number of subscribers shall constitute such committee. Said committee shall have power to fill vacancies and shall serve until their successors are chosen."

Another section of Act 152 is: "Except as herein provided, no law of this state relating to insurance shall apply to the exchange of such indemnity contracts."

It is our view that service upon the insurance commissioner in a suit other than one arising out of a policy, or a contract or agreement relating thereto, is not authorized by the statute. There was no service upon the attorneys-in-fact who succeeded A. B. Banks & Company.

The chancellor found that the power of attorney under which the Banks Company acted in transferring First National Bank stock to The Lumber Underwriters specifically set forth the authority conferred; that, according to the written terms, the power was strictly limited "to the use and purposes [therein] expressed, and to no other purpose;" that there was no evidence of authority having been conferred upon the Banks Company by members of the exchange to purchase the stock, nor was it shown that at the time or thereafter such members knew that the transfer had been made, and "Under the specific terms of the power of attorney, Banks & Company did not possess any right or authority to purchase this stock for defendants."

We concur in this finding.

As to the "unknown defendants" who were treated by appellant as partners, they were served with process only to the extent that they could be reached by the summons directed to the insurance commissioner, and that was unavailing.

In the Lewelling Case it was said: "The power of attorney not only designated the building, street number, and city in which the office of the association was situated, but it also designated the name under which such association made its contracts. Therefore, we are of the opinion that when all provisions of the statute are considered, it meant to designate a name under which the association should do business and to provide the person upon whom service should be had in all suits involving the validity of policies of insurance and contracts of the association. . . . We think, however, the object of this clause was to provide a method for a subscriber

suing on a policy to enforce the proportionate liability against his fellow-subscribers in the event that the reserve fund on deposit was not sufficient to pay the loss, the liability of each subscriber being individual and not joint."

Sections 1240 and 1241 of Pope's Digest authorize discovery where a person or corporation is liable jointly or severally with others by the same contract. In such action the plaintiff shall state that he does not believe the parties to the contract who are known have property sufficient to satisfy the claim.

Appellant undertook to subject three known defendants to its demand: The Lumber Underwriters, the Manufacturing Lumbermen's Underwriters, and the Lumbermen's Underwriting Alliance. It was insisted that the two last-named defendants were trustees holding large sums of money to which The Lumber Underwriters was entitled. There was an allegation that The Lumber Underwriters did not have property sufficient to satisfy plaintiff's demands. Such allegation, however, was not made with respect to the other known defendants, but in effect the contrary was asserted. It is true there was no attempt to hold the Manufacturing Lumbermen's Underwriters and the Lumbermen's Underwriting Alliance with The Lumber Underwriters on the same contract; yet, if the two Missouri exchanges had been compelled to repay The Lumber Underwriters to the extent of the so-called trust fund, and liability of The Lumber Underwriters to appellant had been established, the known defendant (as to whom liability was alleged on the same contract with the unknown defendants) would have had ample property to discharge the obligation. It follows that the discovery statute was not applicable under allegations of the complaint, and the statute of limitations was not suspended as to such unknowns. We do not pass upon the proposition whether, if allegations had been sufficient as to the known defendants, the statute of limitations would have been suspended as to the unknown defendants when the suit was filed, assuming proper service on the known defendants.

In *Hospelhorn, Receiver* v. *Burke,* 196 Ark. 1028, 120 S. W. 2d 705, the court quoted with approval from *Nebraska National Bank* v. *Walsh,* 68 Ark. 433, 59 S. W. 952, 82 Am. St. Rep. 301. The Hospelhorn suit was one against Mrs. Burke to enforce collection of an assessment on stock it was alleged she owned in an insolvent Maryland bank. The question was whether the action was for a penalty, and therefore barred by the two-year statute of limitation, or a statutory liability attaching to a contractual obligation not in writing. The opinion referred to that part of the Nebraska National Bank Case where Mr. Justice WOOD said: "Having reached the conclusion that this is a statutory liability and not a penalty, the statute of limitations would be that applicable to 'all actions founded upon any contract or liability, expressed or implied, not in writing,' for before the form of action was abolished *debt* was the proper action for enforcing a statutory liability of the kind under consideration." [6]

Effect of the Hospelhorn Case was to hold that a suit to enforce liability upon a bank stock assessment must be brought within three years, and not thereafter, and we so hold.

The chancellor properly dismissed appellant's complaint, and his action is in all respects affirmed.

[6] *Hughes* v. *Kelly,* 95 Ark. 327, 129 S. W. 784; *McDonald* v. *Mueller,* 123 Ark. 226, 183 S. W. 751; *Magale* v. *Fromby,* 132 Ark. 289, 201 S. W. 278; *Love* v. *Couch,* 181 Ark. 994, 28 S. W. 2d 1067. *Contra* see *McClain* v. *Rankin,* 197 U. S. 154, 25 S. Ct. 410, 49 L. Ed. U. S. 702, 3 Ann. Cas. 500.