STATE *v.* PHILLIPS PETROLEUM COMPANY.

4-8344                                   206 S. W. 2d 771

Opinion delivered December 15, 1947.

*Guy E. Williams,* Attorney General, and *John E. Coates, Jr.,* for appellant.

*Armistead, Rector & Armistead,* for appellee.

ED. F. McFADDIN, Justice. This appeal necessitates a research into the common law doctrine of *bona vacantia*

—that is, "vacant goods" or "unclaimed property" or "personal property without an owner."[1]

The State of Arkansas, on the relation of the Attorney General, filed a complaint in the Pulaski Circuit Court against the Phillips Petroleum Company, which complaint—omitting caption and signature—reads as follows:

"The plaintiff, State of Arkansas, alleges that the defendant, Phillips Petroleum Company, is a Delaware corporation lawfully authorized to do business in Arkansas, where it is engaged generally in the oil business.

"That this cause is brought both at common law and pursuant to § 11981, Pope's Digest, authorizing a 'suit in the name of the State to recover any forgotten or lost or other outstanding public interests or property . . . to which the State, either in law or equity, may have or claim title . . . '

"That defendant now holds in its possession and custody and has held therein continuously for more than seven years prior to April 15, 1947, various moneys, rents, royalties, credits, and other personal property, which have been unclaimed, forgotten, abandoned, or otherwise lost by various persons (including individuals, firms, associations, partnerships, and corporations), both known and unknown; that defendant received, obtained, procured, and came into possession and custody of said personalty by virtue of various leases, contracts, conveyances, and other agreements, express or implied, relating to real and personal property located in Arkansas.

"That said personalty, being *bona vacantia,* is subject to appropriation by plaintiff in its sovereign capac-

---

[1] Bouvier's Law Dictionary, Third Edition, defines *bona vacantia*: "Goods to which no one claims a property, as shipwrecks, treasure-trove, etc.; vacant goods."

Ballentine's Law Dictionary defines *bona vacantia*: "Personal property without an owner. Such property at common law went to the crown, but not, strictly speaking, by escheat."

Black's Law Dictionary, Third Edition, defines *bona vacantia*: "Vacant, unclaimed or stray goods. Those things in which nobody claims a property, and which belonged, under the common law, to the finder, except in certain instances, when they were the property of the king. 1 Bl. Comm. 298."

ity, after due notice to former owners and claimants and an opportunity for asserting their rights.

"That following plaintiff's request therefor, defendant refused to disclose the names, addresses, and other information relating to said former owners and to the personalty so held by defendant for said period; that plaintiff is entitled to said information which is material to this cause, within defendant's own knowledge, and wholly unknown to plaintiff; and that plaintiff attaches hereto interrogatories, supported by affidavit, addressed to defendant, and calling for such information.

"Wherefore, plaintiff prays for an order directing defendant to answer said interrogatories attached hereto; that defendant be ordered to pay and deliver into the registry of this court all such personalty aforesaid held for said period and for such persons; that on receipt thereof by the clerk of this court, an order be entered absolving defendant of and from all liability to any and all former owners and claimants to said personalty; that all former owners and claimants thereto, be given a reasonable time, on proper notice, for the assertion of their rights, if any, in and to said property; and that a final order and judgment be entered appropriating to and vesting in plaintiff any residue, for costs and all other proper and general relief."

Attached to the complaint were interrogatories which —omitting affidavit—read as follows:

"INTERROGATORIES TO BE PROPOUNDED TO DEFENDANT

"1. Do you now have in your possession or custody any moneys, rents, royalties, credits, or other personal property, which you have held continuously for more than seven years prior to April 15, 1947, which personalty has laid unclaimed or forgotten or abandoned or otherwise lost by any person (including an individual, firm, association, partnership, and corporation), both known and unknown, which property you received or obtained or procured or came into your possession or custody by virtue of any lease, contract, conveyance, or other agree-

ment, express or implied, relating to real or personal property located in Arkansas?

"2. If your answer is in the affirmative, then file a schedule disclosing the following information:

"A. The last known name and address of such person. If unknown please so state.

"B. The kind, type, nature and value of each item of said personalty so held by you.

"C. The legal description of the real or personal property situated in Arkansas, from whence each item of said personalty was derived."

The circuit court sustained the defendant's demurrer, and when the plaintiff elected to stand on the complaint, a final judgment was entered dismissing the complaint. From that judgment there is this appeal; and the State seeks to reverse the judgment by reliance on (1) § 11981, Pope's Digest, and (2) the common law doctrine of *bona vacantia*. We consider these contentions.

I. *Section 11981, Pope's Digest.* This is a part of Act 194 of 1915, and the portion germane to this cause reads: "It shall be the duty of the Attorney General, . . . to institute suit in the name of the State to recover any forgotten or lost or other outstanding public interests or property . . ." This language merely empowers the Attorney General to institute a suit, and has no bearing on the question of whether the complaint in this case states a cause of action.

II. *Bona Vacantia.* The gist of the complaint is, that the defendant holds—and has held for more than seven years—unclaimed, abandoned and forgotten money belonging to unnamed persons; that this money belongs to the State as *bona vacantia*; and that the defendant refuses to disclose the names of the persons "wholly unknown to plaintiff,"[2] to whom such money formerly belonged. The prayer is, that the defendant be required to

---

[2] These quoted words are from the complaint, *supra*. It was conceded by the appellant in the oral argument before this court that the names of all parties—whose money, etc., the defendant was alleged to hold—were entirely unknown to the plaintiff.

deposit the money in the registry of the court and answer the interrogatories, so that the State may proceed to obtain the money. Does this complaint state a cause of action under the common law doctrine of *bona vacantia*?

A. *The Arkansas Statutes.* Chapter 58, Pope's Digest, is entitled "Escheats." (See §§ 5087, *et seq.*, Pope's Digest.) This chapter, in prescribing the method by which the State may receive personal property, is based entirely on the assumption that there must have been a previous administration of the estate of a known decedent. That condition does not exist under the allegations in the complaint in the case at bar, so this statutory proceeding has no application to this case. After analyzing our escheat statutes, appellant concedes that they do not cover such a situation as is here presented, saying:

"The above is the conventional type of escheat legislation applying only to death cases where there are no known takers. In the present situation we are dealing with the escheat of unclaimed and abandoned personalty, irrespective of the death of the owner. We are not contending that the owners are dead, they may or may not be. Therefore, the above statutes have nothing to do with this case. As a result we must turn to the common law to determine the State's right to such property."

B. *The Common Law.* At common law, "escheat" referred to *real estate* which reverted to the crown in the absence of heirs; and *bona vacantia* referred to *personal property*. "In the case of personal property the crown takes because it is property without an owner—that is, *bona vacantia*. As to such property, following the common law, it is not strictly correct to term the right an 'escheat.'" (19 Am. Juris. 380.) In modern American decisions the distinction between the State taking personal property by *bona vacantia*, and real property by

escheat, has been largely disregarded, and many cases[3] refer to the State's taking of personal property as being "by escheat." But in the case at bar it is important that we keep in mind the distinction between escheat and *bona vacantia*; because the State—to prevail in this case—must establish that at common law, the doctrine of *bona vacantia* applies to a situation similar to the one alleged in the present complaint.

Section 1679, Pope's Digest, is Chapter 28, § 1 of the Revised Statutes of 1838, and reads: "The common law of England, so far as the same is applicable and of a general nature, and all statutes of the British Parliament in aid of or to supply the defect of the common law made prior to the fourth year of James the First (that are applicable to our own form of government), of a general nature and not local to that kingdom, and not inconsistent with the Constitution and laws of the United States or the Constitution and laws of this State, shall be the rule of decision in this State unless altered or repealed by the General Assembly of this State."

Did the common law doctrine of *bona vacantia* apply to a situation such as is here presented? In ascertaining the common law, we not only look to our own cases, but we revert to the early English cases, and the early writers on the common law, such as Blackstone, Kent and Bracton. Cases from other American states are also persuasive as to what was the common law. See 12 C. J. 198, *et seq*.

The most exhaustive modern case which we have found on *bona vacantia* is that of *Illinois Bell Telephone Co.* v. *Slattery* (7 Cir.), 102 Fed. 2d 58. In that case the telephone company had been ordered by the regulatory body of Illinois to make overcharge refunds to subscribers. After several years of attempted refunds, there

---

[3] For some cases bearing on this, see: *Commonwealth* v. *Blanton's Executors* (Kentucky, 1842) 2 B. Monroe's Reports 393; *Johnston* v. *Spicer* (N. Y. Court of Appeals, 1887), 107 N. Y. 185, 13 N. E. 753; *Howard* v. *Schmidt* (South Carolina, 1829), Richardson's Equity Cases, p. 452; *Center* v. *Kramer* (Ohio, 1925), 112 Ohio St., 269, 147 N. E. 602; *State* v. *O'Day* (Oregon, 1902), 41 Ore. 495, 69 Pac. 542; *State* v. *Kearns* (Montana, 1927), 79 Mont. 299, 257 Pac. 1002; In re *Payne's Estate* (1932), 208 Wis. 142, 242 N. W. 553. See, also, generally 21 C. J. 851.

still remained many unclaimed refunds in the possession of the telephone company, and the State of Illinois sought to capture all these unclaimed refunds under the common law doctrine of *bona vacantia*. The Circuit Court of Appeals denied such relief to the State. Judge MAJORS, in the opinion of the court, reviewed the English cases [4] on cases in this language:

"Numerous cases are cited wherein it is claimed the doctrine has been recognized. We think it would serve no useful purpose, however, to discuss them. They perhaps, without exception, fall within one or more of the following categories:

" '(1) death intestate with no next of kin of person capable of inheriting;

" '(2) non-charitable trust with a failure of beneficiaries; or

" '(3) corporation dissolved leaving property to which neither stockholders nor creditors were entitled under the English corporation law.' "

Categories (2) and (3), *supra,* could have no possible application to the case at bar. Even if it should be claimed that this case falls in category (1), nevertheless, the State has not alleged that any named person died intestate; so the State has not brought this case within the purview of any of the above categories.

The most scholarly modern article that we have found dealing with the doctrine of *bona vacantia* is in 34 Ill. Law Review 171, entitled *"Bona Vacantia* Resurrected." The writer of that article delved deep into the *bona vacantia,* and summarized the holdings of those

---

[4] The English cases cited in the opinion are: *Middleton* v. *Spicer* (1783), 1 Brown, Ch. 201; *Dyke* v. *Walford* (1846), 5 Moo. P. C. C. 434; in the Privy Council (1848), 12 The Jurist 839; In re *Barnett's Trust* (1902), 3 Brit. Rul. Cas. 198; In re *Wells* (1933), 1 Ch. Div. 29.

musty tomes [5] of the common law. He sharply criticized the conclusion reached by the Circuit Court of Appeals in *Illinois Bell Telephone Co.* v. *Slattery, supra.* But, even so, we conclude that no well-reasoned reported case has sustained the doctrine of *bona vacantia* based on a complaint such as the one in the case at bar, where neither *specific definitely known property* is shown to exist, nor *any known person* is ever claimed to have held any property. One or another of these allegations has been made in every case to which our attention has been directed.

To elucidate: If the complaint in the case at bar had alleged (1) that a definitely named article of personal property was held without any known owner, then a case for *bona vacantia* might have been made; or, (2) that a definitely known person had died or disappeared leaving a chose in action, and that such party had no known heirs, then the common law doctrine of *bona vacantia* might have been invoked under either allegation. At common law, either the former owner or the definite property must have been known.

But in the complaint, here, there was no allegation as to either known property or known person. The complaint in this case is what has been denominated in some opinions as a "fishing expedition." This characterization carries with it no aspersions, and connotes no reflection. The term "fishing expedition," as used in the cases, indicates a proceeding instituted or carried on for the purpose of obtaining information on which to base a subsequent proceeding or defense, the nature of which subsequent proceeding or defense to be necessarily dependent on the information obtained in the first proceeding. Mr. Justice BUTLER used the expression "fishing expedition" in *City National Bank* v. *Wofford*, 189 Ark.

---

[5] Some of the cases and authorities, in addition to those mentioned in *Illinois Bell Telephone Co.* v. *Slattery, supra,* are: 2 Bracton, De Legibus Angliae (1879) 271; 1 Bracton De Legibus Angliae (1878) 61-3; 2 Kent Commentaries (12th Ed. 1873) 322; 2 Holdsworth, History of English Law (3rd Ed. 1923) 222-3; 3 Holdsworth, History of English Law (1909) 352; Ames, Lectures on English History (1913) 188; 1 Blackstone Commentaries (Sharswood Ed. 1860) 200-8; Butler's Notes, 1 Coke's Commentaries upon Littleton (18th Ed. 1823) L. 3, c. 4, § 300; *Commonwealth of Kentucky* v. *Thomas,* 140 Ky. 789, 131 S. W. 797; Enever, *Bona Vacantia* (1927) p. 16.

914, 75 S. W. 2d 666. We review a few cases from other jurisdictions, where this expression, "fishing expedition," has been used:

(1) In *People* v. *Pueblo,* 109 Colo. 411, 126 Pac. 2d 339, there had been an election regarding a city ordinance to increase the salaries of city employees, and on the face of the returns the ordinance had been rejected. Thereafter, certain city employees brought an action alleging only general irregularities with no specific allegations. The Supreme Court of Colorado, in denying the attempted discovery, said: "This is clearly one of those cases generally characterized by courts of review as 'fishing expeditions,' and, as such, condemned . . . "

(2) In *Marietta Mfg. Co.* v. *Hughes,* 9 W. W. Harr. 511, 2 Atl. 2d 922, the plaintiff had sued the defendant for delay in furnishing engines to be installed in dredges being constructed for the U. S. Government, and had alleged that such delay caused the plaintiff to pay damages to the Federal Government. The defendant moved that the plaintiff be required to produce all of its books and all of its files containing the correspondence with the U. S. Government. The Delaware Court, in denying the motion, said: "That the defendant is again fishing for possible evidence, and not, in fact, asking for discovery of what actually appears to be evidence, is also apparent."

(3) In the Great Northern Construction case, 50 Misc. 467, 100 N. Y. S. 564, there was a proceeding in a Canadian court to wind up a corporation. A commission issued to take depositions in New York State to discover the assets of the corporation. The New York court held that the proposed depositions were merely in aid of a "fishing expedition," and refused to require that they be taken.

(4) In *Royster* v. *Unity Life Insurance Company,* 193 S. C. 468, 8 S. E. 2d 875, certain dissatisfied policyholders brought suit for return of their premiums, and, then, for themselves and all others similarly situated, sought an examination of the books of the insurance company. The Supreme Court of South Carolina, in denying such at-

tempted examination said: ''The present case has all the earmarks of a fishing expedition, an enterprise which this court has time and again stated that it does not favor.''

(5) In *State* v. *District Court,* 114 Mont. 128, 133 Pac. 2d 350, there was a suit ostensibly to perpetuate testimony, but of that suit the Supreme Court of Montana said: ''The proceeding launched by the petitioner is what the courts have often spoken of as a fishing expedition, in this instance having for its purpose the discovery of facts and information as the basis for litigation. The relator is under compulsion to come with all his books and records, expose everything he has that tells the story of his business for twenty-five years, submit it all to the scrutiny of the man who is planning a lawsuit against him. Clearly this would be a violation of the relator's right to security against unlawful search and seizure of his papers and effects, and cannot be allowed.''

So, in the case at bar, the State has asked the court to require the defendant to disclose the confidential information contained in its books, so that the State may use that information on which to predicate action for recovery. Neither our statutes [6] nor our cases [7] concerning discovery envisage at the initial stage of a proceeding, such relief as is here sought. To allow the claimed right of the sovereign to be exercised through such a ''fishing expedition'' as is here attempted would be far in excess of the common law doctrine of *bona vacantia.*

C. *The Bank Deposit Cases.* The appellant has cited cases from other jurisdictions, each of which has upheld, as constitutional, a statute which allows the State to obtain unclaimed bank deposits. Such a statute usually: (1) requires all banks to furnish the State with a list of all deposits that have remained inactive and unclaimed

[6] Some of our statutes are: Sections 1239 to 1241, inclusive, Pope's Digest, Joint Liability; § 561, Pope's Digest, Attachment; § 1472, *et seq.*, Pope's Digest, Interrogatories Annexed to Pleadings; § 6123, Pope's Digest, Garnishment; § 5376, *et seq.*, Pope's Digest, In Aid of Execution.

[7] Some of our cases are: *City National Bank* v. *Wofford,* 189 Ark. 914, 75 S. W. 2d 666; *Vandover* v. *Lumber Underwriters,* 197 Ark. 718, 126 S. W. 2d 105; *Aycock* v. *Bottoms,* 201 Ark. 104, 144 S. W. 2d 43.

for a number of years; (2) authorizes the State to file proceedings based on such furnished information; (3) requires the bank named in such proceedings to pay into court the unclaimed money as reflected by the said report made and involved in the proceedings; and then (4) provides for publication, etc., and an order to be entered by the court escheating such unclaimed money to the State. Many states have adopted some such a statute, which is sometimes referred to as a "statute for the escheat of old bank deposits." A few of the cases involving such a statute are: *Commonwealth* v. *Dollar Savings Bank*, 259 Pa. 138, 102 Atl. 569, 1 A. L. R. 1048; *State* v. *Security Savings Bank* (Cal. Dist. Ct.), 154 Pac. 1070; same case in Cal. Sup. Ct., 168 Cal. 419, 199 Pac. 791; same case in U. S. Sup. Ct., 263 U. S. 282, 68 L. Ed. 301, 44 Sup. Ct. 108, 31 A. L. R. 391; *Anderson Natl. Bank* v. *Reeves*, 293 Ky. 735, 170 S. W. 2d 350; same case on second appeal, 294 Ky. 674, 172 S. W. 2d 575; same case U. S. Sup. Ct., 321 U. S. 233, 88 L. Ed. 692, 64 S. Ct. 599, 151 A. L. R. 824. There are also annotations on this point in 1 A. L. R. 1054, 31 A. L. R. 398, 151 A. L. R. 836.

But these bank deposit cases have no direct bearing on the question here before us, because we have no such statute in this State, and therefore have never had occasion to pass on the constitutionality of such a statute.[8]

In this present proceeding the appellant is seeking to obtain alleged unclaimed monies without any statutory authority, but under an asserted common law doctrine; and the fact, that various states have enacted statutes designed to reach unclaimed monies, is a rather strong argument that, as to such states, the right to obtain the unclaimed money was not considered to have existed at common law, but to exist only by force of the statute.

Conclusion: We hold that the complaint does not state a cause of action under the common law doctrine of *bona vacantia*, because there is neither a named known

---

[8] Official legislative journals disclose that in the 1939 General Assembly two bills were introduced, each seeking to provide for the escheat of unclaimed bank deposits. These bills were H.B. 379 (which was withdrawn) and H.B. 484 (which died on the calendar).

party alleged to have been the former owner of the uncertain property, nor is certain known property alleged to have had a former owner, now unknown.

Affirmed.