294 So.2d 428

**Charles A. BOSWELL, Commissioner of Revenue, State of Alabama,**

v.

**CITRONELLE–MOBILE GATHERING, INC., et al.**

**SC 367.**

Supreme Court of Alabama.

March 28, 1974.

As Modified on Denial of Rehearing May 9, 1974.

Willard W. Livingston, Counsel, Dept. of Revenue, Philip C. Davis, Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., of Ala., for appellant.

**346**

W. Dewitt Reams and James D. Brooks, Mobile, for appellees.

HARWOOD, Justice.

This suit involves a controversy between Bart B. Chamberlain, Jr., as General Partner of the Citronelle-Mobile Gathering System, Ltd., Bart B. Chamberlain, Jr., individually and as class representative, as complainants, and Charles A. Boswell, Commissioner of Revenue of the State of Alabama, as respondent.

After a demand by the Commissioner of Revenue that certain funds in the hands of the Gathering System be paid to him under the provisions of Act No. 63, (1971 Acts of Alabama, 1st Ex.Sess., approved 27 April 1971) designated as "Uniform Disposition of Unclaimed Property Act," the complainants brought a declaratory action in the Circuit Court of Mobile County seeking a declaration that the funds held by them were not subject to our Uniform Disposition of Unclaimed Property Act, and praying that the commissioner be enjoined to enforce the Act against the complainants.

After a hearing, the Chancellor found and decreed that the funds in the hands of the complainants were not subject to the provisions of the above mentioned Act, and

permanently enjoined the respondent from further attempting to enforce its provisions against the complainants.

From this decree the respondent commissioner perfected this appeal.

Act 63 now appears in the 1971 Cumulative Pocket Part of Michie's Recompiled Code of Alabama 1958, as Sections 314–342, Title 47, and for convenience we will use these code sections as references in this opinion.

As a threshhold question, the commissioner-appellant argues that the Chancellor erred in denying his motion to dismiss the bill on the ground, among others, that the action was improperly brought in the Mobile Circuit Court in that the commissioner's official residence is in Montgomery County, and the suit could therefore be prosecuted only in Montgomery County.

█ It is of course well established that suits against public officials are ordinarily and properly maintained only in the county of their official residence. First National Bank of Linden v. Alston, 231 Ala. 348, 165 So. 241; Tri-State Corp., Inc. v. State, 272 Ala. 41, 128 So.2d 505; Kelley v. Lingo, 280 Ala. 128, 190 So.2d 683.

This general rule is not questioned by either party but appellees point out that under the provisions of the Uniform Disposition of Unclaimed Property Act there is a special provision permitting an action by any person aggrieved by a decision of the commissioner denying such aggrieved person's claim to property held by the commissioner, to maintain a declaratory action against the commissioner in either Montgomery County, or in the county of residence of the aggrieved party.

Section 334, Title 47 of the Uniform Disposition of Unclaimed Property Act provides:

"Any person aggrieved by a decision of the commissioner of revenue or as to whose claim the commissioner of reve-

nue has failed to act within 90 days after the filing of the claim, may commence a suit for a declaratory judgment against the commissioner of revenue in the circuit court of Montgomery county, in equity, or the circuit court in equity of the county of residence of the person aggrieved, to determine or establish his rights. The proceeding shall be brought within 90 days after the decision of the commissioner of revenue or within 180 days from the filing of the claim if the commissioner of revenue fails to act. The suit shall be tried de novo without a jury. (1971, 1st Ex.Sess. No. 63, § 21, appvd. April 27, 1971.)"

The appellant contends that this section provides a special venue only for those persons who file a claim to gain property already in the possession of the commissioner. We do not agree.

█ Venue, as distinguished from jurisdiction, i. e., the power of a court to entertain an action, pertains to convenience, or policy considerations in the matter of allowing a court having jurisdiction to entertain a cause of action. Ex parte Western Railway of Alabama, 283 Ala. 6, 214 So.2d 284.

Section 334 provides that *any person aggrieved by a* decision of the Commissioner of Revenue * * * may commence a suit for a declaratory judgment against the commissioner in the Circuit Court of Montgomery County, *or in the Circuit Court of the county of residence of the aggrieved person.*

We think the intent of the legislature is clear to provide that in cases of this nature the aggrieved party may sue in the circuit court of either Montgomery County or the county of his residence. A claimant of abandoned property is equally aggrieved by a decision of the commissioner laying claim to abandoned property in the hands of a claimant as he is by the refusal of the commissioner to return property already placed in his possession.

**348**

We hold that venue of this action, under the provisions of Section 334 was properly in either the Circuit Court of Montgomery County, or the Circuit Court of Mobile County, and the appellant can take nothing by his assignments of error 1 and 2. In this aspect this judgment is affirmed.

The stipulations of the parties, and the evidence introduced below tend to show that the land under which lies the Citronelle oil field was not too valuable prior to the discovery of oil thereunder. As a result, the title to many parcels of such land became confused and uncertain. In some instances there had been no administration for several generations of the estates of the one-time owner, or owners, of certain of the parcels.

With the discovery of oil, the Alabama Oil and Gas Board adopted the rule of permitting one oil well to be bored on each forty acre tract.

Oil being migratory, if a clear title to an entire tract were required as a prerequisite to obtaining a permit to drill a well, the oil underlying a tract of uncertain title might be materially exhausted by the producing well or wells on the surrounding forty acre tracts where the title was certain and a permit had been issued for boring a well.

For this reason, the Oil and Gas Board adopted a policy of issuing a permit to a prospective operator (driller) for the boring of a well on any forty acre tract where fifty per cent or more of the owners were known.

Once a well is drilled and produces oil, the practice in the Citronelle field is for the operator (driller) to sell the oil to a gathering system, in this case the appellees.

The operator (driller) delivers the oil to the gathering system under the authority of an A–2 form division order where there are multiple title holders. The gathering system pays the known title owners of the mineral rights their pro rata share under a fixed formula. Where owners are unknown, or where title to mineral rights are disputed or in litigation, the payments due on such disputed titles are designated by the appellees as "suspense accounts" for appellees' accounting purposes. Such funds are not, however, segregated in appellees' general bank account. When a claimant can later show ownership in a share or shares in the "suspense account" the appellees will pay him the accumulated amount due.

Both parties agree that if the Disposition of Unclaimed Property Act is to apply to the monies held by the appellees for payment to the unknown owners of their proportional interests, such application of the Act is to be determined from Section 322 of Title 47, Code of Alabama 1940. This section reads:

"All tangible and intangible personal property, not otherwise covered by this chapter, including but not limited to and by way of illustration, money, stocks, bonds, certificates of membership in corporations, income, amounts due and payable under the terms of insurance policies not covered by section 316 hereof, pension trust agreements, profit-sharing plans, security deposits, refunds, funds deposited to redeem stocks, bonds, coupons and other securities, or to make a distribution thereof, together with any income, interest or increment thereon and deducting any lawful charges, that is held or owing in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than seven years after it became payable or distributable is presumed abandoned; provided, however, that unclaimed or unpaid wages and salaries which have remained unclaimed by the owner for more than one year after becoming payable are presumed abandoned. (1971, 1st Ex.Sess. No. 63, § 9, appvd. April 27, 1971.)"

It is appellee's contention that this section is not applicable in the present case because:

One. Section 322 enumerates the types of property upon which it is to operate, and therefore those things not expressly mentioned are to be excluded from its operation.

The clear and unambiguous wording of Section 322 negatives this contention. It applies to "All tangible and intangible personal property not otherwise covered by this chapter, including *but not limited to and by way of illustration*, money, stocks, bonds, * * *" (Emphasis supplied.)

Two. The funds held by the gathering system merely represent a debt which is owed by the gathering system to the rightful owner of the mineral interests, when that ownership is ascertained, and these debts do not become payable until the title to the mineral interests in question are established.

The evidence shows that the operator delivers the oil to the gathering system under the authority of an A–2 division order issued by the Oil and Gas Board. Title to the oil passes to the gathering system the instant it passes the flanges of the gathering system's pipeline, if there is a direct pipeline connection, or else when the oil passes into a truck owned by the gathering system, if delivery is by truck. The funds generated from the sale of the oil by the gathering system are placed in the gathering system's bank account, and the known title owners are paid their designated proportions. That part of the proceeds on such sales due to unknown owners, or to persons whose claim to interests in the oil are in dispute or litigation are retained by the gathering system and carried on the books of the company under "Suspense Account." As these questionable rights are settled, the gathering system then pays the claim of the established owner.

It is clear under the evidence that the gathering systems gains no right, title, or interest in these "Suspense Account" funds. It had only the possession of such funds and held them as a fiduciary. Intangible rights or interests in the funds were in others.

The provisions of Sections 320 and 322 of Title 47, again furnish a complete answer to the appellee's contentions as set out above under Two.

In Section 320, it is provided that, "All intangible personal property and any income or increment thereon, held in a fiduciary capacity for the benefit of another person, is presumed abandoned unless the owner has, within seven years after it becomes payable *or distributable*, * * *" (Emphasis supplied.)

Section 322 provides that all *tangible and intangible* personal property, that is held or owing in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than seven years after it became payable *or distributable* is presumed abandoned.

In appellee's brief he further argues that the Uniform Disposition of Unclaimed Property Act is an escheat act, and since an escheat act works a forfeiture, it is to be strictly construed. We do not agree with counsel's premise that the Act constitutes an escheat Act.

At common law "escheat" referred to a real property, while "bona vacantia" referred to personal property which the crown took because it was without an owner. State v. Phillips Petroleum Co., 212 Ark. 530, 206 S.W.2d 771; Clovis National Bank v. Callaway, 69 N.M. 119, 364 P.2d 748. See also "Bona Vacantia+Resurrected," 34 Ill.L.R. 171.

"Escheat" means a reversion or forfeiture of property to the state in consequence of a want of any person to inherit. In re Gonsky's Estate, 79 N.D. 123, 55 N. W.2d 60. Under the law as it has now de-

**350**

veloped "escheat" had outgrown its restrictive meaning under the common law, which was based on the English feudal system, and now includes personal property as well as real property, and is now considered as an incident of sovereignty rather than of tenure. In re Lindquist's Estate, 25 Cal.2d 697, 154 P.2d 879; Braun v. McPherson, 277 Mich. 396, 269 N.W. 211.

Our Uniform Disposition of Unclaimed Property Act provides, among other things, that every person holding funds or other property, tangible or intangible, presumed to be abandoned under the Act, shall report to the Commissioner of Revenue in respect to such property. The specifics of this report are set out in Section 324.

Section 325 directs that the commissioner, within 120 days of receiving such report shall cause to be published notice of the report of unclaimed property. The specifics of the manner of publication, and the contents of such notice are spelled out. The notice also provides that if satisfactory proof of claim to the property is not presented in the time provided in the notice, the property will be placed in the hands of the commissioner to whom further claims must be directed.

Section 326 provides that every person who has filed a report with the commissioner as to abandoned property shall within 20 days after the time specified in the notice published by the commissioner for claiming such property pay or deliver to the commissioner all of the abandoned property which has not been turned over to the owner who has proved his ownership thereof to the satisfaction of the holder of the property.

Section 324 relieves the holder of all liability for such property after he has turned the same over to the commissioner.

Sections 332 and 333 provide that any person claiming an interest in the property turned over to the commissioner may file at *any time* a claim to the property or the proceeds from a sale thereof by the commissioner, and upon the filing of such claim the commissioner will conduct a hearing concerning a claim, and render a decision thereon in writing, setting forth the facts in which his decision is based.

If unsatisfied with the commissioner's decisions, the claimant may within 90 days thereafter have a review thereof by a declaratory action.

■ A conventional "escheat" applies only in case of death, as does a conventional "bona vacantia." The act which we are now considering is not limited to the death of the owner. It is a means of providing custodial possession of property where the owner has not for a specified number of years exercised any control or possession of the same. It offers the owner an opportunity to reclaim the same at any time, with the credit of the state insuring his regaining the property upon satisfactory proof of ownership. We can see no reason why an individual or corporation, having no valid claim to the property, should be permitted a gainfall under such circumstances should an appropriate statute of limitations possibly bar a true owner of his lawful and rightful claim.

We hold that funds which have been in the hands of the appellees for seven years or longer and are payable or distributable to unknown owners are, as a matter of law, subject to the provisions of our Uniform Disposition of Unclaimed Property Act. The Chancellor erred in decreeing otherwise, and in enjoining the Commissioner of Revenue of the State of Alabama from enforcing the provisions of said Act. In this aspect, this decree is reversed and remanded to the lower court for proceedings consonant with this opinion.

Affirmed in part; reversed and remanded in part.

HEFLIN, C. J., and MERRILL, MADDOX, and FAULKNER, JJ., concur.

## ON APPLICATION FOR REHEARING

Application for rehearing denied. Opinion modified.

HEFLIN, C. J., and MERRILL, MADDOX, and FAULKNER, JJ., concur.