**CITY OF PROVIDENCE et al.**

v.

**Anthony J. SOLOMON.**

**No. 80–396–Appeal.**

Supreme Court of Rhode Island.

April 30, 1982.

Dennis J. Roberts II, Atty. Gen., Eileen G. Cooney, Sp. Asst. Atty. Gen., for appellee.

## OPINION

KELLEHER, Justice.

At stake in this civil action is approximately $659,632 in unclaimed funds in the registry of the Probate Court of the City of Providence (the Probate Court) to which both the state and the city of Providence (the city) claim entitlement under the provisions of title 33, chapter 21, of the 1956 General Laws (1969 Reenactment) governing administration of unclaimed real and personal property. Acting in his capacity as General Treasurer of the State of Rhode Island, the defendant, Anthony J. Solomon, filed a petition in the Probate Court on February 14, 1980, seeking the transfer to the General Treasurer of all funds in that court's registry which had been unclaimed for a period in excess of five years. On April 8, 1980, the Probate Court granted the petition, and the city filed its appeal therefrom in the Superior Court. After a hearing on the matter, a Superior Court justice affirmed the Probate Court decree, concluding that as a matter of law the state was entitled to the funds in question then held by the Probate Court. Judgment was entered on behalf of the state on August 8, 1980, from which the city prosecutes its appeal to this court.

It is clear from the terms of the state's petition and the statutory provision under which it was brought, G.L. 1956 (1969 Reenactment) § 33–21–18, as amended by P.L. 1979, ch. 118, § 1, that the funds in question are those that have been in the Probate Court's registry prior to 1975. What remains unclear is precisely how long these funds have been in that court's custody. Unfortunately, the schedule of funds attached to the report of unclaimed estates prepared by the clerk of the Probate Court does not indicate the dates on which such monies were deposited in the court's registry, and the city has failed to supply us

John Rotondi, Jr., City Sol., Edward R. DiPippo, Gerald G. Norigian, Asst. City Sols., Providence, for appellants.

with such pertinent data. We have been advised by the clerk of the Probate Court that prior to the filing of the state's 1980 petition, funds held in the court's registry remaining unclaimed for the requisite statutory time period have never before been transferred to the state. He also explained that since 1961 monies which had formerly been transferred to the City Treasurer have simply been retained by the Probate Court. Thus, the funds involved in the case at bar have perhaps been in the court's registry since 1961. Therein lies the root of this controversy, for the Legislature has amended the provisions of ch. 21 on four separate occasions in the last twenty-one years. We therefore find ourselves called upon for the first time to weave our way through this morass of statutory revisions to ascertain their effect and, ultimately, to resolve this dispute.

To provide some historical perspective, we turn to the common-law rule of escheat. As that rule was adopted in this country, both the real and personal property of one who died intestate without heirs or next of kin escheated to the state within which such property was situated as an incident of the state's sovereignty. *Boswell v. Citronelle-Mobile Gathering, Inc.*, 292 Ala. 344, 349–50, 294 So.2d 428, 432 (1974); 2 Scott, *Trusts* § 142.2 at 1093–94 (3d ed. 1967). Actually,

in more technically correct terminology, under the English common law "escheat" referred to the reversion of real estate to the crown for lack of heirs or legal representatives and "bona vacantia" referred to the reversion of personal property to the crown because of the absence of an owner. *State v. Phillips Petroleum Co.*, 212 Ark. 530, 534–35, 206 S.W.2d 771, 773–74 (1947).

In Rhode Island the common-law rule was abrogated in 1768 with the passage of an act granting to the towns the right to take possession of unclaimed property left by a decedent until such time as claimed by the heirs or legal representatives properly entitled to its distribution. *See* Public Laws 1798, "*An Act for Securing the Estates of Persons dying leaving real or personal Estate within this State, and leaving no known Heir, or others entitled to Distribution, within the United States*" § 1, p. 310.[1] This provision has been interpreted as vesting in the cities and towns both the beneficial interest and the use of unclaimed realty and personalty of any person dying testate or intestate as compensation for its care and custody as long as it remains abandoned. *See Attorney General v. City of Providence*, 8 R.I. 8 (1862).

The beneficial interest in unclaimed estates continued to be vested in the municipalities of this state from 1768 until 1961

---

1. Public Laws 1798, §§ 1 and 2 read:

"Section 1. *Be it enacted by the General Assembly, and by the authority thereof it is enacted*, That when any person shall die, leaving any real or personal estate within this State, and shall leave no known heir or legal representative within the United States, to claim the same, it shall be lawful for the Town-Council of the town in which such real or personal estate may be, to direct the Town-Treasurer of such town to take the same into his possession for the use of such town, until the heir or other legal representative of such deceased person shall call for the same; and that the said Town-Treasurer shall account for the neat profits or actual use thereof, to such town, until claimed by the heir or other legal representative as aforesaid, to whom the same shall be delivered, on being claimed, and evidence of the right or title of the claimant shewn; and the said Town-Treasurer shall, in such case, furthermore account with the claimant for the neat profits or interest actually arising from

the use of the real or personal estate, so possessed by him as aforesaid.

"Sec. 2. *And be it further enacted*, That whenever letters testamentary, or of administration, shall be granted on the personal estate of any deceased person, who shall leave no known heir, or other legal representative within the United States, and there shall remain a surplus, after payment of debts and legacies, in the hands of the executor or administrator, the same, at the expiration of two years after the granting [of] the letters testamentary or of administration, shall be paid by the executor or administrator into the town-treasury of the town where the letters testamentary or of administration were taken out, for the use of such town, until the heirs, or persons entitled to distribution thereof, shall appear to claim the same, to whom, on proof of their right, the amount of such surplus received by the Town-Treasurer, with the profits thereof, if any shall have arisen, shall be by him paid over."

when the Legislature unequivocally rescinded its waiver of the right to escheat of personal property, leaving to the cities and towns only the beneficial interest and use of unclaimed real estate within their borders. *See MacMurray v. Comstock*, 99 R.I. 368, 374, 208 A.2d 119, 122 (1965); P.L. 1822, "An act securing the Estates of persons dying, leaving real or personal estate within this State, and leaving no known heir or others entitled to distribution within the United States" § 1, p. 241; G.L. 1909, ch. 317, §§ 1, 5 to 9; G.L. 1923, ch. 368, §§ 1, 5 to 9; G.L. 1938, ch. 582, §§ 1, 5 to 9; G.L. 1956, §§ 33–21–1, –5 to –9; P.L. 1961, ch. 195, § 6. The provisions of the 1961 amendment germane to this appeal dictated that, subject to the debts against the estate, personal property of a person who died intestate without known heirs or legal representatives escheated to the state. Section 33–21–12. Similarly, unclaimed personal property of an owner, beneficial owner, or person entitled to such property whose whereabouts were unknown for a period of seven years escheated to the state pursuant to § 33–21–13. Also included was a proviso subjecting any personalty of an absentee's estate to the state's right of escheat. Section 33–20–11.

Seven years later the General Assembly again substantially revised ch. 21, repealing the former Unclaimed Estates Act as enacted by P.L. 1961, ch. 195, and enacting new provisions relating to unclaimed personalty in the possession of various private parties as well as public officials and agencies. *See* P.L. 1968, ch. 256, § 1 (now codified in G.L. 1956 [1969 Reenactment] §§ 33–21–12 to –19). In general, these provisions specified the time period after which personal property would be presumed abandoned if it remained unclaimed and prescribed the procedures controlling the delivery of such abandoned property to the state General Treasurer. *Id.* (§§ 33–21–21 to –23, –27 to –28, and –34 to –35). For purposes of the instant case the revision with which we are specifically concerned is § 33–21–18, which reads:

"Property held by public officers and agencies.—All intangible personal proper-

ty held for the owner by any public corporation, public authority, or public officer of this state, or a political subdivision thereof, that has remained unclaimed by the owner for more than seven (7) years is presumed abandoned; provided, however, that *no provision of this chapter shall be construed to apply to any property held by any state or municipal court*, or to any officer or employee thereof by virtue of his or her office or employment thereby." (Emphasis added.)

This section was subsequently modified in the next series of revisions to ch. 21 in 1978. A reading of the latter version readily discloses the differences between them.

"33–21–18. PROPERTY HELD BY PUBLIC OFFICERS AND AGENCIES. —All intangible personal property held for the owner by any public corporation, public authority, probate court, or public officer of this state, or a political subdivision thereof, that has remained unclaimed by the owner for more than five (5) years is presumed abandoned; provided, however, that no provision of this chapter shall be construed to apply to any property held by any state court as set forth in 8–12–1 or to any officer or employee thereof by virtue of his or her office or employment thereby." Public Laws 1978, ch. 351, § 1.

*See also* P.L. 1978, ch. 205, art. X, § 1. The 1978 enactment thus reduced the abandonment period from seven to five years and, more importantly, made this provision applicable to the Probate Courts.

The current enactment of ch. 21 deletes the "abandonment" terminology used in P.L. 1978, ch. 351, and reverts to the more direct "escheats to the state" phraseology previously found in the 1961 enactment. *See* title 33, chapter 21, of the 1956 General Laws (1969 Reenactment), as amended by P.L. 1979, ch. 118, §§ 1 and 3. The only specific revision we need make note of for purposes of this case is the inclusion in § 33–21–18 of the term "tangible" personal property, rendering the proviso expressly applicable to both tangible and intangible personalty. That section now reads:

"Property held by public officers and agencies and the probate court.—All tangible and intangible personal property held for the owner by any public corporation, public authority, probate court or public officer of this state, or a political subdivision thereof, that has remained unclaimed by the owner for more than five (5) years escheats to this state; provided, however, that no provision of this chapter shall be construed to apply to any property held by any state court, as set forth in § 8–12–1, or to any officer or employee thereof by virtue of his or her office or employment thereby."

Although the 1961 version of the Unclaimed Estates Act contained an expansive definition of personal property encompassing both tangible and intangible personalty, § 33–21–11, no definition of personal property, either tangible or intangible, was set forth in any of the subsequent enactments. However, intangible property generally refers to that type of property that is evidence of value or of a right or claim against some person or corporation but which itself has no intrinsic value. The most common examples are stock certificates, bonds, promissory notes, franchises, accounts receivable, and bank accounts. *Registrar & Transfer Co. v. Director of Division of Taxation,* 157 N.J.Super. 532, 548–49, 385 A.2d 268, 276 (1978); *see also Badway v. United States,* 367 F.2d 22, 24 (1st Cir. 1966). As required by G.L. 1956 (1969 Reenactment) § 33–22–20, monies paid into the registry of the Probate Court are deposited in a savings or trust institution. Therefore, bearing in mind the definition cited, we conclude that the term "intangible personal property" as used in § 33–21–18 embraces the funds here in question insofar as that provision is applicable to the Probate Court.

It should be evident from this somewhat belabored review of the ch. 21 amendments that under the express terms of the 1961 revisions, operative from June 10, 1961, to June 19, 1968, the state is entitled to the unclaimed funds in the possession of the Probate Court that were deposited during this period. It is equally apparent that the state is entitled to such unclaimed funds deposited with the court on and after January 1, 1979, the effective date of the 1978 amendments, once the prescribed statutory time period has passed. As for the unclaimed funds paid into the court's registry during the period of June 20, 1968, to December 31, 1978, however, there appears to be a gap in the statutory provisions with respect to such monies in view of the then-operative proviso of § 33–21–18 excluding its applicability to municipal courts.

As indicated, the 1978 amendment explicitly provided for prospective application. On the other hand, the 1979 amendment is silent on this issue. The city takes the position that the 1979 revision of § 33–21–18 should not be applied retroactively to compel the escheat to the state of funds held by the Probate Court during the gap period as the amendment reveals no express intention of retroactivity by the Legislature, contains no language necessitating the inference of retroactivity, and, by its very nature, affects substantive rights. It relies on the general rule that statutes and their amendments, particularly when substantive rights would be affected, are presumed to operate prospectively unless it appears by express language or necessary implication that the Legislature intended to give the statute retroactive effect. *State v. Healy,* R.I., 410 A.2d 432, 434 (1980); *Narragansett Electric Co. v. Burke,* R.I., 404 A.2d 821, 828 (1979); *Fox v. Fox,* 115 R.I. 593, 596–97, 350 A.2d 602, 603–04 (1976); *Norton v. Paolino,* 113 R.I. 728, 733, 327 A.2d 275, 278 (1974).

Although we are inclined to agree with the city on this point, we believe the outcome remains the same whether or not the 1979 provisions of ch. 21 are given retrospective effect; the state is entitled to the funds deposited with the Probate Court during the operative years of the 1968 amendment. As the state points out in its argument, the mere fact that the 1968 provisions of § 33–21–18 exempted the Probate Court from the operation of ch. 21 does not justify the inference that the pre-1961 waiver of the state's right of escheat was thereby automatically reinstated. To adopt such an assumption would result in the

anomalous situation of unclaimed funds in the Probate Court's possession going to the city for a finite period in the middle of a twenty-one-year span in which entitlement to such funds otherwise rested with the state. Furthermore, we are of the opinion that the waiver of a common-law right inuring to the state, like the waiver of any other known right or privilege, should not be lightly inferred. *Cf. Marrapese v. State,* 500 F.Supp. 1207, 1212 (D.R.I.1980) (waiver of Eleventh Amendment rights of a state not lightly to be inferred, and court must find that relinquishment or abandonment of known right or privilege is intentional).

Consequently, in the absence of a statutory provision governing unclaimed funds contained in the Probate Court's registry while the 1968 proviso was in effect, the common-law rule controls. *See Traugott v. Petit,* R.I., 404 A.2d 77, 79 (1979); *Benevides v. Kelly,* 90 R.I. 310, 312–13, 316, 157 A.2d 821, 822–24 (1960); *Lombardi v. California Packing Sales Co.,* 83 R.I. 51, 54, 112 A.2d 701, 702 (1955). In the instant case the report of unclaimed estates held in the registry of the Probate Court for more than five years listed some 177 individual estates and the precise sums remaining in each estate. Given that the state's petition would result in the turnover of specifically identified personal property held for the requisite statutory period without a known owner or beneficial owner, the common-law doctrine of escheat, or bona vacantia, is applicable. *See State v. Phillips Petroleum Co.,* 212 Ark. at 535–37, 206 S.W.2d at 773–75. The state's entitlement to such funds, thus, is clearly established.

One additional issue remains to be addressed. The city maintains that even if this court determines that the unclaimed property in question properly escheated to the state, the city is nevertheless entitled to the interest income accrued during the time the property was held by the Probate Court. We find no support for this argument under any of the former or current provisions of ch. 21. Indeed, the 1961 act expressly provided to the contrary. Personal property, as defined by that act and codified in the then-operative provisions of § 33–21–11, specified that in addition to the types of property specifically enumerated therein, the term encompassed "every other kind of tangible or intangible personal property *and the accretions thereon * * *.*" (Emphasis added.) Without question then, any interest that accrued on the funds deposited with the Probate Court while the 1961 amendment was in force also escheats to the state.

With regard to the interest that accrued on the balance of the funds here involved, those deposited in the registry of the Probate Court during the operative years of the 1968 amendment, we similarly conclude that the state is entitled to such interest income. Again, simply because the definition of personal property contained in the 1961 enactment with its allusion to interest income was deleted in the 1968 amendment, it should not be inferred that the Legislature intended thereby to deprive the state of the interest income accrued on the principal funds that escheat to it under the ch. 21 provisions.

Moreover, merely because §§ 33–21–14, –17, and –19 explicitly indicated that personalty and the "interest" or "income or increment" thereon held by certain private persons and entities escheated to the state, we are not persuaded that the omission of such language from the text of § 33–21–18 necessarily means that the state was not under that provision entitled to the interest accrued on personalty held by public officials and agencies. A review of the 1968 version of ch. 21, as well as all other versions, reveals no provision authorizing the deduction by the Probate Court of any interest accrued on the funds in its possession before remitting the principal to the General Treasurer. In short, we find no justification for the turnover of such interest income to the city on the basis that prior to 1961 the municipalities of this state enjoyed the use of unclaimed personal property by virtue of the state's waiver of its escheat powers.

Accordingly, the appeal by the city of Providence is denied and dismissed, the

judgment appealed from is affirmed, and the case is remanded to the Superior Court.

